CHICAGO—FIRST DISTRICT—MARCH, 1912.    511

Piepho v. The Merchants Loan & Trust Co., 168 Ill. App. 511.

---

**Albert Piepho, Defendant in Error, v. The Merchants Loan & Trust Company et al., Plaintiffs in Error.**

**Gen. No. 16,179.**

1. MASTER AND SERVANT—*when obligation to furnish safe place suspended.* Held, that where the evidence discloses that a building was in course of reconstruction and remodeling, that there were no tenants or owners in it, that for some considerable period of time prior to the accident it had been occupied solely by workmen employed by the various contractors and that the conditions of the work were changing from day to day, that the master was relieved from his usual obligation of furnishing to his servant a reasonably safe place in which to work.

2. MASTER AND SERVANT—*when doctrine of assumed risk applies.* Where a hole is open and obvious, and the servant had full opportunity of observing it—the room being light, the entire floor clear and no obstructions to prevent observation—the risk of injury therefrom was assumed.

3. CONTRIBUTORY NEGLIGENCE—*falling through hole.* Held, under the evidence, that the plaintiff who was injured by falling through the hole of a floor was guilty of such contributory negligence as barred recovery.

Error to the Municipal Court of Chicago; the Hon. F. L. FAKE, JR., Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed with finding of facts. Opinion filed March 14, 1912.

WINSTON, PAYNE, STRAWN & SHAW, for plaintiffs in error; RALPH M. SHAW and EDWARD W. EVERETT, of counsel.

BULKLEY, GRAY & MORE, for defendant in error.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is a writ of error to the Municipal Court of Chicago to review a judgment of that court for $750 against plaintiffs in error (hereinafter referred to as defendants), for personal injuries sustained by defendant in error (hereinafter referred to as plaintiff), in falling through a hole in the fifth floor of a building to the floor below.

Defendants, as trustees of the estate of Marshall Field, deceased, were remodeling a six-story building on the northeast corner of Franklin and Monroe streets, in the City of Chicago. The work was being done by various contractors,—their respective employes working on the building at the same time. Thomas Nicholson, employed by defendants to make the proposed changes in the building, supervised the work of all contractors. J. C. McFarland & Co. were doing the sheet metal work on the building, by virtue of certain written proposals made by them and accepted by the defendants, and also were doing certain extra work, as suggested by Nicholson from time to time, on the basis of labor expended and materials used. Plaintiff was the foreman for McFarland & Co. on the building, was thirty years of age, and had had fourteen years' experience in sheet metal work on both new and remodeled buildings. About two weeks before the accident he had worked on said fifth floor installing sheet metal fire-proofing on the ceiling of a toilet room, and he testified that when he completed his work there he noticed that the steamfitters were cutting a hole in the ceiling at another point and that

he knew it would be necessary for him later on to do some patching at that point. He testified as to his relations with Nicholson during the progress of the work substantially as follows:

"Nicholson would tell me what he wanted done, and I would notify our superintendent, if the work requested to be done was not in the specifications. The specifications were at the office. I had the details. What was to be done besides that the shop would give me. If Nicholson requested me to do certain work, I would have to call up my foreman, and he would look up the specifications and see whether it was covered or not, and, if it was determined that it was not an extra, I would go ahead and direct my men what to do. Nicholson would not do that. All he did was to point out what he wanted done and where he wanted it done. Then he would go away. I was hired and paid by the McFarland people. They had the power to discharge me. Christ Clausen was superintendent for McFarland & Co.; he came to the building once a day; he gave directions to me and I would see that they were carried out. Nicholson had a carpenter foreman under him, who kept the time of all day work, and who kept my time on day work. I did not get orders from him. There was day work and contract work."

The fifth floor of the building was a large room about ninety feet square, with sixteen windows. It was very light. Three rows of wooden pillars, running east and west, supported the floor above. At the east end of the main room was a stairway, which was so enclosed by a partition, extending from floor to ceiling, that to the west of the stairway, and east of the west partition wall there was a passage-way on said fifth floor, running north and south, about six feet in width and thirty feet in length, at the south end of which there was a door, facing south, affording access to and from the main room. The passage-way at its north end was lighted by a window facing west, and at its south end by a transom over said door, which window and transom "borrowed" light from the main room. The pas-

sage-way, however, was dark by comparison with the abundant light in the main room. About three feet from said door, and in a southwesterly direction from it, stood one of the supporting pillars above mentioned in the main room. About two feet distant from this pillar, and in a northwesterly direction from it, was the uncovered and unguarded hole in the floor of the main room through which plaintiff fell. This hole was two feet and nine inches west of said stairway partition, and was about four feet square. It was an opening for a chute for the purpose of conveying goods from floor to floor. The work on said chute was not completed at the time of the accident, that is, the boards connecting the fourth and fifth floors and certain material for fire protection had not been put in. The hole had been there about one month. The witnesses differ as to whether or not at any time during that month boards had been nailed across the hole, but, be that as it may, at the time of the accident it was not boarded over, was not guarded, and was not a hidden hole. At this time, also, there were three other and larger uncovered and unguarded holes on said floor, one where another stairway was to be built and two where elevators were to be run, the work on which was in progress.

On the morning of the accident, plaintiff was given directions as to his work that day by his superintendent, and, with an assistant, went to work on the roof, on a skylight over one of said elevators. Later in the morning Nicholson went to the roof and told plaintiff he had some work for him on the ceiling over said fifth floor. They left the roof together, went down the stairway to said fifth floor, passed along said passage-way, and entered the main room on said floor through said door at the south end of said passage-way, Nicholson being in the lead. They then walked in a southwesterly direction, passing south of said pillar, then in a northwesterly direction and then in a northerly direction,

Piepho v. The Merchants Loan & Trust Co., 168 Ill. App. 511.

passing to the south and west of said hole, and within two feet from it, and, after walking about twenty feet in said northerly direction, Nicholson stopped and pointed out to plaintiff the place in the ceiling, in the northeast corner of said room, where the steamfitters had cut the hole in said ceiling, and which then necessitated some patching in the sheet metal work. Plaintiff thereupon told Nicholson that he knew what the work to be done was, and that he remembered leaving that work unfinished until the steamfitters had put their pipes through the ceiling. Nicholson then pointed out to plaintiff certain iron which was standing against a wall, and said: "There is the iron, if you can use it." Nicholson gave no directions to plaintiff as to how or in what manner he wanted the work done, but merely told him to go ahead and do it; and plaintiff testified that he then knew what to do, and that he was to select his own material, get his own helper and do the work in his own way. Plaintiff and Nicholson then separated. Nicholson at no time showed plaintiff where the holes in the floor were, nor did he suggest what routes plaintiff should take while walking over the floor. Plaintiff did not then examine said iron to ascertain if it could be used in said patching work, but immediately retraced his steps, and went up stairs to the sixth floor, taking the same route in return that he had used while in the company of Nicholson, passing to the west and south of the hole in question,—in other words, going *around* the hole a second time, and passing within two feet from it, passing to the south of said pillar, and through said passageway to the foot of the stairs.

Arriving on the sixth floor plaintiff, recalling the words of Nicholson regarding the possible use of said iron in said patching work, decided to return to the fifth floor, and examine the iron, and see "whether it could be put on or whether I would have to send to the shop for new stuff." Thereupon plaintiff a second

time descended the stairs, walked through said passageway, and entered the main room through said door, but evidently turning more to the north than on the former trip with Nicholson, stepped into said hole, fell and was injured.

Plaintiff testified that after he entered the main room through said door on his second trip he turned the corner and that is all he remembers; that the passage-way was dark; that when he came through the door there was such a strong light that his eyesight was "kind of blurred," but that he "kept walking," and that he did not look for the hole, "did not look down," or take any notice of where he was walking.

In urging this court to reverse the judgment, counsel for the defendants argues that there should be no recovery in this case because plaintiff was a servant of McFarland & Co., which firm was an independent contractor; that where one contracts to do work on a building, furnishes his own assistants, executes the work in accordance with a plan previously given him by the persons for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, such relation is clearly that of a contractor, and not of a master and servant, and if one is injured by the contractor's negligence, he has no right of action against the persons for whom the work is done (Hale v. Johnson, 80 Ill. 185; Foster v. City of Chicago, 197 Ill. 264; Linquist v. Hodges, 248 Ill. 491); and that if there was any obligation on the part of any one to warn plaintiff of the dangers of the holes in the floor that obligation rested upon McFarland & Co., and not upon the defendants. Counsel for plaintiff concedes it to be the law of this State as laid down in the cases above cited, but says that this case is not within the rule because plaintiff at the time he received his injuries was obeying an order of Nicholson, defendants' representative, in relation to certain work which Nicholson wanted done, in other words, that plaintiff

at the time was a servant of the defendants, "borrowed" from McFarland & Co. for the particular work.

"It is well settled that one who is a general servant of another may be lent or hired by his master to another for some special service, so as to become, as to that service, the servant of such third party. The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired." Consolidated Fireworks Co. v. Koehl, 190 Ill. 145; Harding v. St. Louis Stock Yards, 242 Ill. 444.

Applying the above test to the facts of this case, as above outlined, we are of the opinion that at the time plaintiff was injured he was a servant of McFarland & Co., and not of the defendants, and that he was then engaged in arranging for the doing of certain work which McFarland & Co. were required to perform under their arrangement as to extra work with the defendants.

The evidence in this case clearly discloses that the building was in the course of reconstruction and remodeling, that there were no tenants of the owners in it, that for some considerable period of time prior to the accident it had been occupied solely by workmen, employed by the various contractors, and that the conditions of the work were changing from day to day. Under such a state of affairs it is seemingly the law that a master is relieved from his usual obligation of furnishing to his servant a reasonably safe place in which to work. Richardson v. Anglo-American Provision Co., 72 Ill. App. 77; Falkeneau Construction Co. v. Ginley, 131 Ill. App. 399; Wells Bros. Co. v. Manion, 140 Ill. App. 527. If this action had been brought against McFarland & Co., as master, plaintiff could not, in our opinion, have maintained a judgment for damages for the injuries sustained, and no reason is perceived why any different rule, under the facts of

this case, should be applied to the defendants, the owners of the building.

Plaintiff, not being the servant of the defendants at the time of the accident, if the theory for recovery be that plaintiff was rightfully upon the premises as a licensee at the invitation of the defendant, still defendants are not liable, because the danger of falling through the hole was not a hidden danger. The hole was open and obvious, and plaintiff had full opportunity of observing its location. The room was very light, the entire floor was cleared and there were no obstructions to prevent that observation.

"The law is well settled that an owner or occupant of land who by invitation, express or implied, induces or leads others to go upon premises for any lawful purpose is liable for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist without timely notice to the public or to those who are likely to act upon such invitation, and if there are hidden dangers upon the premises he must use ordinary care to give persons rightfully upon the premises warning thereof, and that the owner owes such duty to an independent contractor or his servants while working upon his premises." Calvert v. Springfield Light Co., 231 Ill. 290.

In this Calvert case the owner of a building made a contract with one Drake to remove two smokestacks located upon the roof. Calvert's intestate, in the employ of Drake, was sent with other workmen to remove the stacks. One of the stacks had fallen and broken an irregular hole through the boards and tar paper on the sloping roof, which hole was plainly visible to the workmen. Immediately adjoining the hole, while the tar paper remained intact, the boards underneath were broken, which condition was not visible to persons upon the roof. The deceased, while engaged in removing one of said stacks, stepped upon the roof near said hole, and broke through the tar paper and fell and was

killed.    The court *held* that the owner of the building was liable, but said, (p. 292) :

"The evidence shows that the hole .in the sloping roof was visible to the workmen upon the roof, and if it appeared from the evidence that the deceased fell through the hole in the roof we should not hesitate to hold that there could be no recovery on account of the assumption of the risk by appellee's intestate."

We are also of the opinion that plaintiff was himself guilty of negligence.    The hole was in plain sight. Plaintiff a few moments before the accident had twice passed around the hole and within two feet from it. When he entered the main room through the stairway partition door, he should have looked where he was going.    He himself says he did not look.    If his eyes were "kind of blurred," as he says, upon entering the brilliantly lighted room from the darkened passage-way, he should have waited a moment, and not "kept walking."    Chicago Edison Co. v. Davis, 93 Ill. App. 284; Falkeneau Const. Co. v. Ginley, 131 Ill. App. 399.

For the reasons indicated the judgment of the Municipal Court is reversed, and we find as facts that the defendants were not guilty of negligence, that the plaintiff assumed the risk and was himself guilty of negligence.

*Reversed with findings of fact.*