Rose Bandosz, Administratrix of the Estate of Thomas J. Bandosz, Deceased, Appellee, v. A. Daigger and Company, Appellant.

Gen. No. 33,767.

496

Opinion filed January 27, 1930.

McKenna & Harris and Gottlieb, Schwartz, Markheim & O'Bryan, for appellant; James J. McKenna, Abraham W. Brussell and Claude A. Roth, of counsel.

James C. McShane, for appellee.

Mr. Presiding Justice McSurely delivered the opinion of the court.

Plaintiff, as administratrix of the estate of Thomas J. Bandosz, deceased, brought suit to recover damages

for the wrongful death of Bandosz, a fireman of the City of Chicago, who was injured while on defendant's premises in the discharge of his duties, which injuries resulted in his death. Upon trial a verdict was returned for the plaintiff in the sum of $10,000. The jury also returned a special finding that defendant was guilty of wilful and wanton conduct proximately contributing to the death of Bandosz. From the judgment on the verdict defendant appeals.

Plaintiff's declaration alleged that on March 11, 1927, defendant was the occupant of premises at 159 West Kinzie Street, Chicago; that on that date there was a city ordinance prohibiting the storage of more than 10 gallons of benzol or ether in any building in the district in which defendant's building was located, but that defendant wantonly and unlawfully stored several hundred gallons of benzol and ether in the basement of its building, and as a result thereof a fire broke out; that deceased was a fireman in the City of Chicago and entered the premises to extinguish the fire and while thus upon the premises another fire or explosion broke out as a result of the storage of benzol, causing the death of plaintiff's intestate. It is also alleged that defendant unlawfully kept and delivered large quantities of inflammable liquids, including benzol and ether, in its basement in close proximity to an open flame, resulting in the fire. The third and fourth counts alleged substantially the same matters.

The evidence tended to show that on the day in question benzol was being removed from a tank on an automobile truck in front of defendant's building into some tanks or drums in the basement by a hose which ran through the basement window. There were 9 or 10 of these drums holding 50 or 55 gallons each. Defendant's employee in the basement would put the nozzle of the hose into a drum and when it was filled he would call to the driver of the truck to shut off the hose at the truck. He would then withdraw the hose

from the drum and transfer it to the next drum. In doing this the benzol would splash out and run on the floor in a stream running within approximately a foot and a half from a lighted hot water heater. This heater was lighted with about 30 or 35 small gas jets which were about a foot above the floor. Defendant's employees were doing this for about an hour and a half and had filled nine of the drums, when they saw the stream of benzol on the floor ignite near the heater and the flames travel toward the drums. They fled from the premises and shortly thereafter there was an explosion and the front part of the basement was in flames.

The fire department was notified, responded, and flooded the basement with water through the windows and apparently extinguished the fire. Then a crew of firemen was sent down into the basement for the purpose of examining closely to ascertain whether the fire was completely extinguished. Bandosz was one of this crew. At this time there was approximately 12 inches of water on the floor and floating on this was a layer of oil of various kinds. There was then another flash or explosion and the fire marshal ran into the basement and found the top of the water all on fire and Bandosz attempting to reach the stairway. The marshal assisted him, but he was so badly burned that he died 12 hours later.

Plaintiff charges that defendant's violation of city ordinances and the statute caused the fire. The ordinance limits the storage of inflammable liquids, such as benzol and ether, in such buildings as defendant's, to an amount "not exceeding 10 gals." It is not disputed that at the time of the fire, between 450 and 500 gallons of benzol and over 50 gallons of ether were in the basement. The ordinance forbids the storage of alcohol in an amount exceeding 120 gallons. At the time of the fire there were 1,130 gallons of alcohol in

the basement. That the quantity of inflammable material in the basement far exceeded the amount permitted by the ordinance is established beyond any controversy.

Defendant argues that the benzol was taken into the basement contrary to instructions given by the general manager. It was unloaded in the manner above described under the supervision and direction of Edward O'Connell, who had charge of the shipping department for defendant. The act of the agent within the scope of his employment is the act of the corporation which employs him, even though his conduct may be unknown to the officers of the company or contrary to orders. This is true even when the conduct of the agent constitutes wanton or wilful misconduct. *Consolidated Ice Mach. Co. v. Keifer,* 134 Ill. 481; *Franklin Life Ins. Co. v. People,* 200 Ill. 619; 26 Cyc. 1528.

It also might be suggested that the jury need not of necessity believe that O'Connell violated his instructions in placing benzol in the basement; when the manner of unloading the benzol was under discussion he remarked that he would "think the matter over," indicating that it was left for him to decide.

Defendant says that, because it was its intention shortly to remove the drums when filled with benzol from the basement, therefore they were not "stored" in the basement. Webster's Dictionary defines storage as "the act of depositing in a store or warehouse for safe keeping." The ordinance does not fix any time limit for the storage of inflammable liquids. The jury might well believe that keeping such a large amount of benzol in the basement for an hour and a half violated the ordinance. *Wright v. Chicago & N. W. Ry. Co.,* 27 Ill. App. 200. Also in view of the storage of unlawful quantities of ether and alcohol in the basement, the jury might reasonably doubt defendant's intention to remove the benzol.

The ordinance also prohibits the drawing or handling of inflammable liquids "in the presence of or in close proximity to open flame or fire." Section 2,300. Section 2,302 provides that "Handling or storing of any inflammable liquid within dangerous proximity to open flame or fire is hereby expressly prohibited."

The State statute, Cahill's St. ch. 38, ¶ 326, provides that: "It shall be unlawful for any person, firm, association or corporation to keep, store, transport, sell or use any crude petroleum, benzine, benzol, gasoline, naphtha, ether or other like volatile combustibles, or other compounds, in such manner or under such circumstances as will jeopardize life or property."

It is self-evident that the handling of the benzol in such close proximity to the open flame of the heater in the basement was a violation of both the provisions of the ordinance and of the statute.

Defendant argues that Bandosz, while on the premises, was a licensee by operation of law and the only duty it owed him was to refrain from wantonly or wilfully injuring him (*Gibson v. Leonard,* 143 Ill. 182; *Casey v. Adams,* 234 Ill. 350), and that the ordinance in question does not apply to city firemen, citing *Thrift v. Vandalia R. Co.,* 145 Ill. App. 414. This case involved a city ordinance providing that no railroad train should be started within the city limits without first sounding some warning. A police officer while in the yards of defendant company was run over by a backing train which gave no warning. It was held that the ordinance could only have been intended to protect those whose presence on the private right-of-way of the railroad company might reasonably have been anticipated and not to protect police officers who might appear in the yard "at rare intervals and at unexpected times and places."

Here, the ordinance and statute are general in their terms and not limited in their operation to any particular class of persons. It is especially appropriate

that firemen should receive the benefits of such ordinances, as their duties require them to go into places of danger which should not be increased by the presence of unlawful quantities of volatile combustibles. In *Parker v. Barnard,* 135 Mass. 116, a police officer was injured while on the defendant's premises through the violation of a statute regulating the construction of elevator shafts. It was there held that the statute was not to be limited in its operation and that "those who enter in the performance of a lawful duty, and are injured by the negligence of the party responsible, have just ground of action." We hold that plaintiff's intestate was entitled to the protection and benefits of the ordinances and of the statute under consideration.

It is not the law in this State, as contended by defendant, that it owed no duty to the fireman until it knew of his presence in the building. *Bremer v. Lake Erie & W. R. Co.,* 318 Ill. 11.

Much is said as to whether the immediate occasion of the so-called second fire or explosion was from a spark from the first fire or because of an open torch carried into the basement by one of the firemen. Although there is evidence from which the jury could properly believe that the fire was caused from a spark, yet we do not think it is important whether the explosion was occasioned by a spark or a torch. Defendant's violation of the statute in having an excessive quantity of benzol in the basement and handling it near an open fire caused the original fire and it is responsible for the natural result of this fire. *Illinois Cent. R. Co. v. Siler,* 229 Ill. 390; *Pullman Palace Car Co. v. Laack,* 143 Ill. 242.

Whether defendant's violation of the ordinance and statute constituted wanton and wilful conduct, resulting in the injuries to plaintiff's intestate, was a question of fact for the jury. An intentional disregard of a known duty necessary to the safety of another and

an entire absence of care for the life or persons of others, such as exhibits conscious indifference to consequences, make a case of legal wilfulness, which may be the basis of a charge of wilful and wanton infliction of injuries. *Walldren Express & Van Co. v. Krug,* 291 Ill. 472; *Jeneary v. Chicago & I. T. Co.,* 306 Ill. 392; *Brown v. Illinois Terminal Co.,* 319 Ill. 326. The placing of an excessive amount of benzol in the basement was a conscious act by defendant and it therefore must be presumed to have intended to do so. Defendant's president knew of the quality of benzol, testifying that "it is a very inflammable material." The jury could properly find that the placing of such a large quantity of benzol and the keeping of other inflammable liquids in the basement, together with handling the same near the open flame, constituted wilful and wanton conduct on defendant's part such as jeopardized life and property.

It is said that the court erroneously, at the instance of plaintiff, instructed the jury that the "plaintiff is not bound to prove her case beyond reasonable doubt, but is merely bound to prove it by a preponderance of the evidence." A somewhat similar instruction was condemned in *Molloy v. Chicago Rapid Transit Co.,* 335 Ill. 164, but that instruction contained the objectionable words that the evidence need preponderate "but slightly" in plaintiff's favor, and the instruction also directed a verdict. In both of these respects it differs from the instruction before us. Furthermore, at the instance of defendant, the jury was instructed that plaintiff was required to prove that the defendant was guilty of wilful and wanton negligence. Also other given instructions fully told the jury the essential elements of plaintiff's case. The special interrogatory submitted to the jury, which was answered in the affirmative, read: "Was defendant guilty of wilful and wanton misconduct which proximately contributed to the deceased's death, as alleged in the

declaration?'' We do not think that the instant instruction compels a reversal.

Complaint is made of other instructions which we do not think are important.

The court properly admitted in evidence the ordinance as contained in the Code of 1922, which purports to contain the general ordinances of the City in force November 22, 1922. The legislative act of 1919, Cahill's St. ch. 38, ¶ 327, section 2, giving the Department of Trade and Commerce power to make and adopt reasonable rules and regulations concerning gasoline and volatile oils, by its terms does not apply to cities and villages already having regulatory ordinances upon the subject. The Code of 1922 purports to include all the parts of the Chicago Code of 1911 and the Code of 1922 did not change the prior Code regulating volatile substances but re-enacted the same in a modified form. The ordinance was valid and properly in evidence.

Upon the record before us we would not be justified in disturbing the verdict of the jury, and as there were no reversible errors upon the trial, the judgment is affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.