Fred Markus, a Minor, by Florence Markus, His Mother and Next Friend, Appellee, v. Lake County Ready-Mix Co., Appellant.

Gen. No. 10,849.

Second District.

August 15, 1955.

Released for publication September 1, 1955.

421

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago, and Snyder, Clarke & Dalziel, of Waukegan, for appellant; Oswell G. Treadway, of Chicago, of counsel.

Lidschin & Pucin, and E. R. Parnass, all of Waukegan, for appellee.

MR. JUSTICE EOVALDI delivered the opinion of the court.

Plaintiff seeks to recover damages for personal injuries sustained when the ground under the rear wheel of one of the defendant's trucks, equipped with a concrete mixer, which had been parked near an excavation where a house was to be erected, for the purpose of

pouring ready-mixed concrete into the foundation forms, onto which the plaintiff had proceeded, gave way, or the truck slid, causing the rear of said truck and mixer to be precipitated into the excavation and against the plaintiff, causing the injuries complained of.

Plaintiff, 17 years old at the time, was employed by his father who was engaged as a subcontractor in the construction of the basement and foundation in forms erected in the excavation, dug by others. The day in question was rainy and misty, and as defendant's concrete-mixer truck arrived at the scene, plaintiff's employer, the elder Markus, furthest from the place where plaintiff was working, pointed to the place where concrete was needed. Defendant's driver testified that the mixer always turns when it has wet cement in it and that there were 4½ yards of concrete in the truck. Plaintiff testified that the tumbler of the truck was moving before he got between the truck and the foundation, and the mixer had attained the top speed for a mixer to go after the truck stopped, and as the tumbler went fast, the truck started vibrating and going back and forth. In backing his truck to within two or three feet of the excavation, defendant's driver testified he was on ground firm but wet and inclining towards the excavation. It does not appear that he blocked the wheels in any manner.

The case was tried before a jury. Motions for directed verdict at the close of plaintiff's case and at the close of all the evidence were denied. The jury returned a verdict finding the defendant guilty and assessing the plaintiff's damages in the sum of $12,500. Judgment was entered on the verdict. Thereafter, defendant entered its motion for judgment notwithstanding the verdict and its alternative motion for a new trial. On the hearing, these motions were overruled and denied. From this judgment defendant appeals.

In the amended complaint, consisting of two counts, plaintiff charged in Count I that the defendant knew, or in the exercise of reasonable care should have known, that there was an open trough between the concrete forms and the land or ground upon which it was operating its truck or concrete mixer, and that the ground was unsupported other than by natural formation; that plaintiff was employed by Henry J. Markus as a laborer to do certain work upon the concrete to be poured into the said forms, and charged that the defendant, by its agents and servants, "negligently and carelessly drove, moved, operated or managed said truck or concrete mixer, causing it to topple over or fall into the opening or excavation adjacent to the aforesaid concrete forms," as a result of which plaintiff was struck and crushed with great force and violence, and sustained severe and permanent injuries.

Count II adopts the allegations of Count I and charges that the defendant was guilty of one or more of the following acts:

"a. Negligently and carelessly drove, moved, operated or managed said truck or concrete mixer too close to the edge of the land or ground.

"b. Negligently and carelessly drove, moved, operated, managed or stopped said truck upon an incline.

"c. Negligently and carelessly operated, managed or stopped said truck upon a slippery incline.

"d. Negligently and carelessly managed, operated or stopped said truck on a slippery incline, too close to the edge of the aforesaid excavation while the vehicle was vibrating and in an unsafe position.

"e. Otherwise carelessly and negligently operated and stopped said truck."

Damages were claimed in the sum of $20,000.

Defendant filed its answer denying the age of plaintiff to be 17 and alleging that he was of the age of 18 years; denied that he was in the exercise of ordinary care and caution for his own safety, as required of a

minor of his age, denied any knowledge of the land or ground being unsupported other than by natural formation, denied each and every charge of negligence laid against it in the amended complaint, and denied that plaintiff sustained injuries or damages as claimed.

Defendant's theory of the case is that it was not guilty of any negligence which was the proximate cause of the plaintiff's alleged injuries; that plaintiff failed to prove the exercise of ordinary care on his own part prior to and at the time of the occurrence complained of; and that if negligence there was, which was the proximate cause of the plaintiff's alleged injury, it was the negligence of the plaintiff himself or of his father and employer, Henry J. Markus.

■■ As to defendant's contention that it was error for the trial court to overrule the motions for a directed verdict and for judgment notwithstanding the verdict, a motion for directed verdict or for judgment notwithstanding the verdict presents the single question whether there is in the record any evidence which, standing alone and taken with all its intendments most favorable to the party resisting the motion, tends to prove the material elements of his case. Seeds v. Chicago Transit Authority, 409 Ill. 566; Lindroth v. Walgreen Co., 407 Ill. 121, at p. 130; Gorczynski v. Nugent, 402 Ill. 147, at p. 156; Weinstein v. Metropolitan Life Ins. Co., 389 Ill. 571, at p. 576. We are not concerned with the weight or credibility of the evidence, but only with the narrow question whether there is any evidence, together with all reasonable inferences to be drawn therefrom, which would justify submission of the case to the jury. Lindroth v. Walgreen Co., 407 Ill. 121, at p. 130.

■ The question of due care on the part of the plaintiff is always a question of fact to be submitted to a jury whenever there is any evidence in the record which, with any legitimate inference that may reasonably and legally be drawn therefrom, tends to show

the exercise of due care on the part of plaintiff. McManaman v. Johns-Manville Products Corp., 400 Ill. 423; Ziraldo v. W. J. Lynch Co., 365 Ill. 197; Thomas v. Buchanan, 357 Ill. 270, at p. 278; Palmer v. Loveless, 342 Ill. App. 60; Pennington v. Rowley Bros. Co., 241 Ill. App. 58, at p. 67. From the evidence in this case it appears that plaintiff had gone to one of his employer's trucks to get tools while defendant's concrete mixer was being backed to the northeast corner, and he walked back alongside the concrete mixer and the excavation; he then proceeded to get up on the top of the forms, turned around and was pinned when the truck came down on him. Each person engaged in the work where a house was to be erected had his particular job to do. Plaintiff had nothing to do with the operation of the concrete mixer and was acting under the orders of his employer. In Ziraldo v. W. J. Lynch Co., supra, a case relied on by both plaintiff and defendant, the plaintiff, who was an employee of a subcontractor, in doing his work leaned into a shaft where he had previously seen elevators in operation and was injured. He had been working in the building about two and one-half weeks. In our case, plaintiff had been working at this particular site for about three days. In reversing the Appellate Court and affirming plaintiff's verdict in the trial court, the Supreme Court, on page 199, said:

"Whether a plaintiff was guilty of contributory negligence is ordinarily a question of fact for the jury to decide under proper instructions. It becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence."

[4-7]  Plaintiff was not bound to anticipate danger and negligent conditions on the part of defendant and its employee. Ziraldo v. W. J. Lynch Co., supra;

Johnston v. V. H. Flannery Building Materials, 6 Ill.App.2d 35, 126 N.E.2d 510. One engaged in the construction of a building owes to another not in his employ, engaged in the same work and exercising due care for his own safety, the duty of using reasonable care to avoid injuring him. Ziraldo v. W. J. Lynch Co., supra, at p. 201. In this case the evidence shows that defendant's truck driver knew that he had a heavy load in the concrete mixer which was on the truck he was driving. He knew that it was wet and raining. He knew that he had stopped his truck on an incline and that the heaviest part of his truck was at the right rear wheel. He testified that was where the ground gave way. Testimony of the plaintiff is to the effect that the tumbler was moving rapidly causing the truck to vibrate and move back and forth. Defendant's driver was not operating an ordinary truck. He was operating a truck with a concrete mixer metal tumbler filled with $4\frac{1}{2}$ yards of wet cement. He testified that the mixer was equipped with two chutes, each between three and four feet in length, and on cross-examination he admitted that the chutes attached to the rear of his truck were between eight and ten feet long. "I had two sections that are three or four feet long. I had a chute on the back of the truck in addition to that. That was at least ten feet long when extended." By using the chutes which he had on his truck, the driver could have stopped his truck farther away from the excavation and not within two or three feet of same. It appears that the truck slid about two feet on the ground before it fell into the trench and that the ground was not level, and the truck driver knew that the ground was slippery. The questions of due care of plaintiff and of negligence of the defendant were matters for the jury to pass on. The record here presents sufficient evidence to go to the jury and the motions for directed verdict

427

and for judgment notwithstanding the verdict were properly overruled.

Objection is made by defendant to the action of the trial court in refusing to give instruction numbered 26. That instruction is as follows:

"You are instructed that it is incumbent upon the plaintiff to prove the facts relative to any claim of future suffering or future disability with a reasonable degree of certainty, and, if you should find for the plaintiff you will not be warranted in awarding the plaintiff damages for any claim of future suffering or future disability which have not been shown by a greater weight of the evidence to be reasonably certain to follow."

We do not think it was error for the trial court to refuse the instruction. The jury was properly instructed on every element of the case. Twenty-five instructions were given to the jury by the court, and eight were refused. The jury were informed by instruction numbered 16, given on behalf of defendant over the objections of plaintiff, that plaintiff could not recover unless he proved every element of his case by a preponderance of the evidence, including damages. By defendant's instruction numbered 29, the jury was told that its verdict must be based upon the evidence and the jury was warned against speculation, conjecture or guess as to plaintiff's injuries, or the facts in the case.

Instruction numbered 26 required plaintiff to prove the facts relative to any claim of future disability with a reasonable degree of certainty. This instruction not only singled out one element of plaintiff's damages but also required a higher degree of proof than by a preponderance or greater weight of the evidence. Instruction numbered 29 covered the correct intent of defendant's refused instruction numbered 26.

The court is not required to give more than one instruction upon a particular subject. East St.

Louis & S. Ry. Co. v. Zink, 229 Ill. 180; National Enameling & Stamping Co. v. McCorkle, 219 Ill. 557, at p. 562. As stated in East St. Louis & S. Ry. Co. v. Zink, supra, on page 190, "Where a party asks more than one instruction, stating, in varying language, the same proposition, his complaint that the court refused the one which the party deems most favorable to his cause and gave the other does not deserve extended notice. Appellant could have avoided this difficulty by presenting to the court only that one of these three instructions which was to it most satisfactory."

Defendant contends that the verdict of the jury is excessive. Plaintiff was injured on May 22, 1952, when his legs were pinned across the right knee and left shin by the truck coming back on him. He testified that he felt considerable pain in his legs and that he could not move them. He was taken by ambulance to St. Therese's Hospital, where X-rays were taken and he was put in bed. His legs were packed in ice during the entire week he was there. He was then taken home in an automobile where he remained for 14 days. Because of pain through the right leg, right knee and up through the hip and in the back, he called the family physician, Dr. Robert G. Smith, who advised him to go back to the hospital, where he was taken care of by him. At Dr. Smith's request, Dr. John J. Milroy was called in. Plaintiff's leg was then placed in a cast for approximately a week. He was given shots and heat treatment. He remained in the hospital until July 9 when Dr. Milroy took his foot out of the cast, examined his leg and took him into surgery.

Dr. Milroy, a physician since 1935; a member of the Active Staff of the Victory Memorial and St. Therese's Hospitals in Waukegan and on the Staff at Condell Hospital in Libertyville and Lake Forest Hospital in Lake Forest, testified that his practice was limited for the past 10 years to orthopedic surgery; that he graduated from Rush Medical College in Chi-

cago in 1932, interned at St. Mary's Hospital in Quincy, Illinois, and residency in orthopedic surgery at the University of Missouri State Hospital, and after the war had 10 months of residency at Billings Hospital; that he was a Lieutenant Commander in the Naval Medical Corps in orthopedic surgery; and that he first saw plaintiff on June 14, 1952, at St. Therese's Hospital; that his examination consisted of an examination by feeling or palpation of his right thigh, and it disclosed there was a defect in the muscle and overlying tissues in the front and to the side of the right thigh—about one inch of separation of the tissues in the thigh. The X-rays were negative. He made a diagnosis of multiple contusions, including the left leg and right flank, and erosion of the muscles and fascia of the outer half of the right thigh, and the injury to the fifth lumbar vertebra in the nature of a moderately severe sprain and that he made this diagnosis in the hospital records on said June 14, 1952. He later operated on the plaintiff's thigh and repaired the muscles and fascia damage, and removed some tissue in the nature of scar tissue which had already taken form, between the muscle fibers. He found a defect in the quadriceps muscle and the attachment of the fascia lata on the outer aspect, and a mass of scar tissue, and that was removed, then the torn edges were freshened and replaced in their normal position, and repaired with surgical sutures. The incision was closed and a cast applied which extended from the ankle to the groin. He treated him after that and saw him at the hospital a time or two and about two or three weeks later in his office, at which time he split the cast in two halves and recommended certain exercises for plaintiff but for plaintiff to use the cast and to continue with crutches or a cane as necessary to walk. He again saw plaintiff on November 4, 1953, and again on February 13, 1954, and at that time his tenderness was limited to the fifth lumbar vertebra, and that at the time of the trial

430

he was still tender, with the tenderness limited to the fifth lumbar spinus process. The doctor testified that he had made a different diagnosis and that it was his impression that plaintiff had an unstable lumbo-sacral joint, and that undue movement in that joint causes pressure on the nerve root in the fifth lumbar space due to protrusion of cartilage from the intervertebral disc at that level. He recommended that if plaintiff could not wear a corset as he had prescribed previously, he should have an operation to remove the protruding disc cartilage and a transplanting bone graft in that area. He testified that in his opinion this condition was permanent, unless plaintiff has an operative fixation to prevent abnormal movement at that level, and that the condition of the ruptured intervertebral disc, as it then existed, might or could have been caused by the injury of May 1952, and that the reason for his opinion was that plaintiff had tenderness and evidence of a low back injury in June 1952, following which could have been due to stretching of the ligaments of the vertebra between the fifth lumbar and the fourth lumbar, and the first sacral segments, and that the instability of the lumbo-sacral joint might have been present without severely displaying symptoms until such time as an unusual strain was placed on the back following which it was made more complete; that the charges for such an operation would be between $500 to $1,000 and that the hospital expenses would be in the neighborhood of $600 or $700 and that plaintiff should not return to heavy work in less than 10 months.

The family physician, Dr. Smith, testified that he treated plaintiff from the date of the injury to the last of July and that his bill was $362 which he reduced to $300.

The hospital bill at St. Therese's was $209.50 for the first visit and $359.95 for the second visit. Plaintiff paid $8.50 for a knee bandage and $15.30 for a girdle.

431

Dr. Milroy's bill was $224. Plaintiff lost 13 weeks of work at $2.05 an hour for 40 hours per week and an additional 12 weeks to the date of the trial in December 1954. He testified that he could not lift heavy things and that he has pain consistently in his back and in his right leg and knee and that he has not worked regularly since he returned to work the first time.

██ ██ In the case of Ford v. Friel, 330 Ill. App. 136, wherein plaintiff, a woman 66 years of age, suffered injuries to her back, the court said, at page 140:

"This court has been called upon many times to determine whether a verdict under a given state of facts was excessive. The decline in the purchasing power of money has frequently been considered in determining the question. (Citing cases.) The question of damages is peculiarly one of fact for the jury, and where the jury has been correctly instructed upon the measure of damage, and it is not claimed nor shown that the size of the verdict clearly indicates it was the result of prejudice or passion on the part of the jury, the award should not be disturbed upon review."

██ After a careful consideration of the evidence, we are satisfied that we would not be justified in disturbing the amount awarded by the jury. We find no reversible error in the record, and the judgment is accordingly affirmed.

Affirmed.

DOVE, J., concurs.