Francis Zebell, Plaintiff-Appellee, v. Fred Saufnauer, Jr., d/b/a Better Roofing & Siding Company, Defendant-Appellant.

Gen. No. 48,458.

First District, Second Division.
October 23, 1962.
Rehearing denied November 28, 1962.

Meyers & Matthias, of Chicago (Donald L. Thompson, of counsel), for appellant.

George C. Rabens and S. Joseph Formusa, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court:

Francis Zebell sued Fred Saufnauer, Jr., to recover damages for injuries proximately caused by the alleged negligence of the defendant while plaintiff was

painting a downspout on a two-flat building at 2436 North Cicero Avenue, Chicago. Defendant's motions for a directed verdict, for judgment notwithstanding the verdict and in the alternative for a new trial were denied. Defendant appeals from a judgment on a verdict for $5,000.

In November, 1955, Mary Gillette, the owner of the premises, entered into a contract with Saufnauer, the defendant, to install new siding, doors, windows, gutters, downspouts and to repair the back porch. Mrs. Gillette made a separate contract with Alf Hilding Olsen to paint the windows, doors, gutters and downspouts. Olsen, the painting contractor, employed Zebell, the plaintiff, to work for him as a painter, in performance of his contract with the owner. Plaintiff was an employee of Olsen, an independent contractor. Defendant was a separate independent contractor.

Defendant Saufnauer began the performance of his contract with Mrs. Gillette. Inclement weather caused an interruption in the work for several days. Defendant knew that Olsen was to do the painting under a contract with the owner. He did not know when Olsen or his employee would do the paint job. Prior to the interruption defendant installed the downspout on a temporary basis to function until the siding went on, as the siding had to go underneath the gutter and downspout. The downspout was placed against the wall with a metal strap that was sufficient to hold it under normal conditions. Defendant had no knowledge that Olsen or his employee would go to work there before defendant's work had been completed.

Plaintiff, Zebell, 49 years of age, had been a house painter since 1935. On December 1, 1955, he was employed by and under the direction of Olsen to paint at the Gillette house. Plaintiff knew that defendant and his employees had been remodeling the premises, which included removing railings on the rear porch,

290

installing new gutters, a downspout, doors, windows and removing siding. Plaintiff did painting and priming on windows, frames and doors. He testified that then there was a two week interruption because of adverse weather, and that at 8:00 a. m. on December 1, 1955, he returned for the third time and went to work. The weather was "fair." He painted the rear of the building until about 10:30 a. m. During that time neither the defendant nor any of his employees was "on the job." He painted the inside of the gutter on the top of the building at the rear. He climbed to the roof to do that painting by a ladder placed on the rear porch of the second landing. Upon finishing the gutter he started to paint the downspout from the top. He used a four-foot stepladder placed on the second landing. The downspout was about 10 feet long from the porch to the gutter. The contract between Mrs. Gillette and defendant required that the position of the downspout be changed so that instead of running through the floor of the rear porch that it run outside the porch and then bend under in its descent. At the time plaintiff was painting the downspout, its position had been changed. The downspout was not installed to be stationary because it was to be removed again as defendant's work on the siding progressed.

After painting about one-half of the downspout plaintiff got off the stepladder and while standing on the floor of the second landing continued painting. The bucket of paint was on the floor of the porch. Plaintiff had the brush in his left hand. He took the brush full of paint and proceeded to paint the exterior of the downspout. He "leaned" his right hand "gently" against the downspout. He can balance himself "in that fashion." He was "starting to paint the back of the downspout" and as he "rested" himself against "the front part a little bit" the downspout

gave way. To the question, "What happened to you?" he answered: "Well, I lost my balance and I fell against the railing of the porch and I fell over." He fell to the sidewalk 10 to 15 feet below. His employer, Olsen drove him in an automobile to a physician's clinic in the vicinity.

Plaintiff knew that defendant had the contract to replace the gutters and downspouts. He knew that defendant had not finished his part of the contract. He knew that the downspout had been moved from its original position and that that type of downspout would normally be secured by a metal strap. He knew that the rear porch had not been completed, that the porch railing was temporary and that the porch itself was incomplete. Olsen, plaintiff's employer, testified that three pieces of the downspout "came down," that he ran to see what happened and saw plaintiff lying on the walk. He did not see plaintiff before he fell. As far as the record shows, plaintiff was the only one present at the time of the occurrence. Olsen testified further that he knew about the condition of the porch at the time; that the porch railing was temporary; that he could tell that by looking at it; and that on construction of a more substantial railing he would and did paint it.

It is obvious that the negligence alleged by plaintiff against the defendant was not proved. Defendant did not negligently erect and install the downspout, negligently fail to fasten and secure the downspout or negligently place the downspout. It was temporarily placed where the defendant wanted it. The downspout was by defendant and his employees designedly left unsecured, inasmuch as that facet of defendant's work was not completed and the downspout was but temporarily attached to the wall of the building for the purpose of accommodating the flow of rain water from the gutter until it would be

permanently secured. Defendant exercised due care in the performance of his contract. Neither defendant nor any of his employees was present at the time plaintiff fell and he knew nothing of the occurrence until a time subsequent thereto. Plaintiff knew that the entire premises were in the process of being repaired, and he knew, had he used his faculties, that the downspout was never intended to support the weight of a painter. Plaintiff also knew that when the porch repairs were completed by defendant that plaintiff's employer Olsen would be required under his contract with the owner to paint the porch. Plaintiff testified that he did not know how the downspout was fastened, if at all, to the wall of the building. He did not know the amount of work defendant had left to be done. Plaintiff's statement of claim alleges that the downspout was "caused to and did fall" and that it was "forced to and did become detached and fell to the ground." The evidence shows that it was plaintiff who did these things. He had worked above and around the downspout for two and one-half hours before it fell.

■ In support of his position plaintiff cites 57 CJS, Master and Servant, § 610; 38 ALR 371; Fetzer v. Noel Construction Company, 175 Ill App 401, 403; Variety Mfg. Co. v. Landaker, 129 Ill App 630, 633; Ziraldo v. W. J. Lynch Co., 365 Ill 197, 201, 6 NE2d 125; Markus v. Lake County Ready-Mix Co., 6 Ill App2d 420, 427, 128 NE2d 370; Lisle v. Anderson, 61 Okla 68, 71, 159 P 278; Smith v. Brady, 121 NYS 474, 475. In our opinion these authorities are not applicable to the issues in the instant case. In the cited cases the independent contractors and their employees were performing their respective contracts independently and the negligence charged in each case was for causing injury to the plaintiff therein as the result of an affirmative, active or positive act on the part of the

defendant. In the Ziraldo case, the court said (201): "One engaged in the construction of a building owes to another not in his employ, engaged in the same work and exercising due care for his own safety, the duty of using reasonable care to avoid injuring him." In the instant case plaintiff and defendant were rightfully on the premises of the owner by virtue of the invitation of Mrs. Gillette. Liability cannot be imposed upon the defendant unless the negligent act charged could have been foreseen or reasonably anticipated. The plaintiff knew that defendant was still working on his part of the job and that the premises were still being repaired. In 35 Am Jur, Par 187, page 615, the author says: "The rule requiring the employer to make safe the place where his employees are at work is said to be subject to an exception where the conditions of the place are constantly changing as the work progresses, as where a building is in course of being constructed or demolished." See also Payne v. Baltimore & O. R. Co., 351 Ill App 186, 114 NE2d 323; Piepho Loan & Trust Co. v. Merchants Loan & Trust Co., 168 Ill App 511, 517; 31 ALR2d page 1381; Employers M. L. I. Co. of Wisconsin v. DiCesare & M. C. C. Corp., 194 NYS2d 103, 107.

The downspout that became detached was at the time but temporarily installed before the completion of the repairs contracted for by defendant. The downspout was never intended, even when permanently affixed to the building, to support the weight of a person while painting or otherwise. It remained attached to the wall of the building from the time the employees of defendant placed it there until it was forced therefrom by the plaintiff. The amount of pressure applied by plaintiff to wrest the downspout from its position is unknown, but it was sufficient to break the railing of the porch as plaintiff lost his balance. The evidence

shows that defendant performed his contract with Mrs. Gillette in a workmanlike manner.

For these reasons the judgment is reversed and the cause remanded with directions to enter judgment notwithstanding the verdict for the defendant, Fred Saufnauer, and against plaintiff.

Judgment reversed and cause remanded with directions.

FRIEND, J., concurs.

BRYANT, P. J., dissents.

BRYANT, P. J., dissenting:

The majority opinion sounds in the proposition that the plaintiff knew or should have known that the drain spout was not permanently attached and that for this reason he followed an improper course of conduct by resting his weight upon it while in the process of painting it. In other words, without saying so in so many words, my colleagues on the bench appear to be saying that the plaintiff was guilty of contributory negligence. There is a great deal made of the fact that he knew that the defendant had not finished his part of the contract; that he knew that the drain spout had been moved from its original position; and, finally, that he knew that the porch railing was temporary. It might be asserted with equal vigor that the defendant knew that a contract for the painting had been awarded; that he knew that the painting might be commenced before he had finished his own work and that, in fact, it would be a great deal more practical if the painting was so commenced because it would be considerably easier to paint the back of the drain spout before it was permanently attached than afterwards (there is a difference between permanently at-

295

taching a drain spout and securely attaching one); and, finally, that it would not be uncommon for a painter to "lean on" or "rest his weight on" a drain spout of this nature and in this type of location, as was indicated by another painter giving expert testimony concerning what was common, in a situation of this nature, in the trade. In short, it does not appear to be self-evident that the defendant was justified, in these circumstances, in not securely attaching the drain spout; nor does it appear to be self evident that the plaintiff was careless or contributorily negligent in "leaning" on the drain spout as he painted it.

I cannot emphasize strongly enough that these very facts and this very issue, i. e. contributory negligence, were squarely presented to the jury and resolved in favor of the plaintiff. At the close of the trial four special interrogatories were submitted to the jury, one of which asked: "(1) Was the plaintiff, at the time and immediately prior to the occurrence in question, in the exercise of due care and caution for his own safety?" This interrogatory was answered in the affirmative and there appears to be no breach of discretion on the part of the jury in reaching this conclusion. On a cross-examination, plaintiff was asked to demonstrate to the court and jury his position as he painted. The court and jury were thus shown exactly how plaintiff was standing as he painted, where his feet were, the position of his body, and the manner in which he employed his hands just before he fell. Furthermore, expert testimony was introduced (and properly so, Wibel v. Illinois Cent. R. Co., 155 Ill App 349; Fetterman v. Production Steel Co. of Illinois, 4 Ill App2d 403, 124 NE2d 637) to the effect that the procedure followed by the plaintiff in painting the drain spout was in conformity with the customary and usual methods of painting drain spouts.

Defendant has maintained that this expert testimony was erroneously admitted. However, in a tort case, custom and usage can have an important bearing on the question of contributory negligence and is a fact to be proved as any other fact and it may be the subject of expert testimony. Fetterman v. Production Steel Co. of Illinois, supra; Dickson v. George B. Swift Co., 238 Ill 62, 87 NE 59; O'Rourke v. Sproul, 241 Ill 576, 89 NE 663. In each of the cases cited by the defendant in support of his proposition that the common usage testimony should have been excluded, special circumstances existed which do not exist in the case at bar, which removed those cases from the general rule stated above.

The plaintiff in this case has stated a good cause of action and his path to recovery has been cleared by a finding of the jury that he was free from contributory negligence. The well established proposition of law upon which plaintiff places his claim to recovery was stated in Fetzer v. Noel Const. Co., 175 Ill App 401, in the following manner, at page 403:

> "The law is well settled that a contractor whose servants are engaged upon work about which the servants of another contractor are engaged owes the duty of ordinary care in prosecuting his work in such a way as not negligently to injure the servants of the other."

See also Variety Mfg. Co. v. Landaker, 129 Ill App 630; Ziraldo v. W. J. Lynch Co., 365 Ill 197, 6 NE2d 125; Markus v. Lake County Ready-Mix Co., 6 Ill App 2d 420, 128 NE2d 370; McDermott v. Rex Elec. Co., 201 Ill App 391 (Abstract); Garrity v. Newman & Co., 202 Ill App 194 (Abstract); Lisle v. Anderson, 61 Okla 68, 159 P 278; Smith v. Brady, 121 NYS 474.

The majority opinion cites several of the above mentioned cases in support of this proposition and

states: "In our opinion these authorities are not applicable to the issues in the instant case. In the cited cases the independent contractors and their employees were performing their respective contracts independently and the negligence charged in each case was for causing injury to the plaintiff therein as a result of an *affirmative, active or positive act* on the part of the defendant."

With due respect to my colleagues on the bench, I submit that this is not an accurate statement of the factual situations within those cases. To be sure, in McDermott v. Rex Elec. Co., 201 Ill App 391 and Ziraldo v. W. J. Lynch Co., 365 Ill 197, 6 NE2d 125, the harm causing negligence could reasonably be classified as "active." However, in Variety Mfg. Co. v. Landaker, 129 Ill App 630, the damages resulted when a plank, which the defendant's servants had used to span a gap, gave way and the plaintiff, an employee of an independent contractor, fell to his death. In Fetzer v. Noel Construction Co., 175 Ill App 401, the defendant's servant had placed a plank across an elevator shaft in an unfinished building under construction. This plank extended into the next shaft. The plaintiff, while riding down on an elevator in that shaft, was injured when the elevator in which he was riding struck the plank and it bounded up. In Markus v. Lake County Ready-Mix Co., 6 Ill App2d 420, 128 NE2d 370, the plaintiff was injured when a ready-mix truck slid sideways when the earth on which it was parked gave way. In Garrity v. W. J. Newman & Co., 202 Ill App 194, plaintiff was injured when he fell into a hole negligently left uncovered by the defendant's employees. In Lisle v. Anderson, 61 Okla 68, 159 P 278, plaintiff was injured when one of the defendant's wooden joists upon which he was standing gave way. The joist was described as "windshaken or worm-eaten." In Smith v. Brady, 121 NYS 474, plain-

tiff was injured when several bags of sugar weighing approximately 350 pounds each fell on him. The bags fell because they had been left standing in such manner that the ones on top were overhanging. I fail to see how the negligence in the cases cited is any more *"affirmative, active or positive"* than the negligence in the case at bar.

It is the defendant's contention that despite the proposition that a contractor has a duty of ordinary care toward the employees of other contractors, as established in the Illinois cases cited above, at the time of the accident, the plaintiff and defendant were performing entirely separate and individual contracts, each emanating from the owner of the premises and that in the performance of their respective contractual duties, neither plaintiff nor defendant was obligated to provide the other with a safe place in which he might perform his work. It is his contention that the relationship between plaintiff's employer and himself was that of licensee-licensor and that the duty of a licensor is merely to refrain from intentionally injuring his licensee. In support of this proposition he cites only three Illinois cases; Roth v. Schaefer, 300 Ill App 464, 21 NE2d 328; Purtell v. Philadelphia & Reading Coal & Iron Co., 256 Ill 110, 99 NE 899; and Ellguth v. Blackstone Hotel, Inc., 408 Ill 343, 97 NE2d 290, all of which cite the proposition that "the owner of the premises owes no duty to exercise care to keep such premises in a reasonably safe condition to a person who may be there as a mere licensee." I have no quarrel with this proposition but feel that it is inapplicable to the case at bar. The cases above cited were actions against the owner and controller of the premises. In the case at bar the dispute is between two independent contractors, each working under a separate contract with the owner of the premises who is not a party to the action. Aside from these

three Illinois cases, defendant asserts a host of decisions from foreign jurisdictions involving disputes between independent contractors and which make the licensee-licensor as opposed to the invitee-invitor distinction and imposes a lesser standard of liability as a result of this distinction. In Brauner v. Leutz, 293 Ky 406, 169 SW2d 4, a painter was injured when the scaffold on which he was standing collapsed after he had asked permission from the contractor doing the carpentry work, who owned the scaffold, if he could use same for the purpose of painting a cornice which the carpenters had recently installed. The court held that the carpenter-contractor owed no duty of care to the painter who was a mere licensee in the use of his scaffolding. The identical result was reached in Pettijohn & Sons v. Basham, 126 Va 72, 100 SE 813, wherein a sheet metal worker was injured in the collapse of scaffolding which he was crossing, which also belonged to the carpenter-contractor. In Bilton v. MacKenzie, 19 DLR 633, an Ontario case, the court reached the same result when a painter was killed when a plank, upon which he was walking, belonging to the carpenters, collapsed and he fell to his death. Defendant also cites: Ryan v. Toop, et al., 114 App Div 165, 99 NYS 590; Cole v. L. D. Willcutt & Sons Co., 218 Mass 71, 105 NE 461; Arthur v. Standard Engineering Co., 193 F2d 903; Eddy v. Brady Plastering Co., 111 Ohio App 190, 171 NE2d 722; Wright v. Kansas City Structural Steel Co., 236 Mo App 872, 157 SW2d 582; Watt & Sinclair of Florida, Inc. v. Hunter, 126 Fla 750, 171 So 817; Comerford v. Jones & Laughlin Steel Corp., 170 Ohio St 117, 162 NE2d 861; Slyter v. Clinton Const. Co. of Cal., 107 Cal App 348, 290 P 643; Cohen v. Josam Const. Corp., 23 Misc2d 298, 200 NYS2d 88. In each of these cases, the plaintiff was using some agency of the defendant's, either with or without permission, as a means of accomplishing

his own job. There was some piece of equipment, erected or owned by another contractor, intended for his own exclusive use, having no relationship to the work of the "licensee," which was appropriated by him solely for his own convenience. In the case at bar the drain spout was not an agency belonging to the defendant which was being used to accomplish the object of the plaintiff's employment. The drain spout was the object of the plaintiff's employment. He was not using it as an aid in accomplishing some other purpose. He was painting the drain spout itself; it was not the means to an end, it was the end, i. e., the object of his employment and, therefore, there was nothing which could be the subject of a license.

In summary, it appears that the plaintiff has stated a good cause of action in that the defendant did not fulfill his duty of ordinary care to the employees of another contractor. The issue of contributory negligence was squarely faced by the jury, and properly so, and resolved in favor of the plaintiff. For these reasons, the jury verdict and the judgment of the trial court should not be upset and the decision should be affirmed.