JAMES COZZA, Plaintiff-Appellant, v. CULINARY FOODS, INC., Defendant and Counterplaintiff-Appellant (American Igloo Builders, Inc., Defendant and Counterdefendant-Appellee).

First District (6th Division)    Nos. 1—98—0076, 1—98—0078 cons.

Opinion filed January 14, 2000.

Schwartzberg, Barnett & Cohen (Benjamin H. Cohen, of counsel), and Heller & Richmond, Ltd., both of Chicago, for appellant James Cozza.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, Todd E. Carlson, and Lloyd E. Williams, of counsel), for appellant Culinary Foods, Inc.

Grant, Ross & Pittman, of Chicago (Lisa L. Lantero, of counsel), for appellee.

PRESIDING JUSTICE ZWICK delivered the opinion of the court:

Plaintiff, James Cozza, instituted this action against defendants Culinary Foods, Inc., and American Igloo Builders, Inc., seeking recovery for personal injuries sustained while he was working on a reconstruction project. Plaintiff's complaint asserted claims under common-law negligence and the Illinois Structural Work Act (740 ILCS 150/1 *et seq.* (West 1994) (repealed by Pub. Act 89—2, eff. February 14, 1995)) (the Act). Culinary Foods subsequently filed a counterclaim for contribution against American Igloo. The trial court granted summary judgment in favor of defendant American Igloo, and plaintiff and Culinary Foods have appealed.

The record reveals that on November 19, 1991, plaintiff was employed by Illinois Telephone Service and was assigned to perform

certain telecommunications work as part of a renovation project being done at the food processing plant owned and operated by Culinary Foods. Culinary Foods hired several contractors, including American Igloo, to perform work in connection with the plant renovation. The workers on the site included electricians, plumbers, sprinkler workers, bricklayers, cement workers, and telephone repair workers. Culinary Foods acted as the general contractor for the project. Howard Davis, the president of Culinary Foods, and Roger Kirwin, the production manager, hired and coordinated the various contractors to perform their work on a "time and materials" basis.

American Igloo was the carpentry contractor hired by Culinary Foods to do a variety of remodeling and reconstruction projects at the plant and had been on the site continuously for 14 months. When American Igloo began its work, Calvin Hartley, the carpentry foreman for American Igloo, informed Davis that some of the existing telephone equipment would have to be removed from the walls. Hartley knew that Culinary Foods had called a telephone service contractor to check the wires in the shipping and receiving area of the plant, but he did not know exactly when that work was to be done.

While working at the plant, American Igloo had erected a scaffold in the shipping and receiving area. A few days before the accident, American Igloo employees had partially disassembled and folded the scaffold and stored it in a corner against a wall, where it was out of the way of the employees of Culinary Foods. According to Hartley, it was possible for a man to stand on the scaffold in its partially folded configuration.

On the date of the accident, plaintiff was at the plant to test voice and data lines in a main distribution frame (MDF). Davis, who was then president of Culinary Foods, asked plaintiff to tag the live telephone lines and to remove the dead ones. Davis directed plaintiff to the MDF, which was mounted on a wall, between five and eight feet above the floor. Directly below the MDF, plaintiff saw the scaffold, which he assumed had been placed there for his use. The scaffolding was approximately 10 feet long, 7 feet high, 3 to 5 feet wide, and had wooden planks on the top. Davis did not say anything to plaintiff about moving the scaffold out of the way, and they did not discuss how the plaintiff was to accomplish his task or how he was to reach the telephone wires. Plaintiff did not know that the scaffold belonged to American Igloo, and he did not ask permission to use the scaffold.

Plaintiff shook the scaffold, which seemed secure, before he climbed onto it. He then climbed up the side of the scaffold and began work on the MDF. While he was on the scaffold testing the telephone lines, at least one of the wooden planks broke, and plaintiff fell to the

floor. Plaintiff had been to the Culinary Foods plant on six prior occasions, but he had not needed to use any scaffold on those occasions.

Plaintiff denied that Illinois Telephone had a standing order prohibiting the use of customers' scaffolds. He further testified that he had never been instructed by his employer not to use scaffolding that was in place on jobsites, and he had previously used scaffolding owned by other customers. However, plaintiff's supervisor, Norman Kwak, testified that using the tools or equipment of anyone other than Illinois Telephone was strictly prohibited and against company policy. If additional tools or lifting equipment was required, the employee was expected to call the office and notify the dispatcher.

American Igloo's policy was that no one was permitted to use its scaffolding without obtaining permission from American Igloo's foreman on the job. During the course of the project, Harley did permit the employees of Dual Temp, another contractor on the job, to use American Igloo's scaffolding, but the employees of Dual Temp did not use the same scaffold used by plaintiff at the time of his injury. In addition, American Igloo's employees sometimes used Dual Temp's scaffolding.

The trial court entered summary judgment in favor of American Igloo, finding that liability could not be imposed based upon violation of the Structural Work Act because American Igloo was not "in charge of the work" within the meaning of the statute. The court also found that if liability could not be imposed for violation of the Structural Work Act, American Igloo could not be held liable for common-law negligence. Both plaintiff and Culinary Foods have appealed.

Summary judgment is proper only where the pleadings, depositions, admissions, and affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1996). Summary judgment is a drastic remedy to be granted only where the movant's right to it is clear and free from doubt. *In re Estate of Hoover*, 155 Ill. 2d 402, 410, 615 N.E.2d 736 (1993); *Colvin v. Hobart Brothers*, 156 Ill. 2d 166, 169-70, 620 N.E.2d 375 (1993). In considering whether summary judgment is appropriate, the court must construe the pleadings, depositions, admissions, and affidavits most strictly against the moving party and liberally in favor of the opponent of the motion. *In re Estate of Hoover*, 155 Ill. 2d at 410-11; *Colvin*, 156 Ill. 2d at 170; *Kolakowski v. Voris*, 83 Ill. 2d 388, 398, 415 N.E.2d 397 (1980). Inferences that may reasonably be drawn from the evidence are to be resolved in favor of the party responding to the motion. *Kramer v. Weedhopper of Utah, Inc.*, 141 Ill. App. 3d 217, 221, 490 N.E.2d 104 (1986). Because the propriety of an order granting summary judgment involves a ques-

tion of law, a court of review considers the matter *de novo. In re Estate of Hoover*, 155 Ill. 2d at 411.

■ The purpose of the Structural Work Act is to protect persons engaged in extrahazardous occupations such as the construction, repair, alteration, or removal of buildings, bridges, viaducts, or other structures. *Meyer v. Caterpillar Tractor Co.*, 135 Ill. 2d 1, 7-8, 552 N.E.2d 719 (1990); *Vuletich v. United States Steel Corp.*, 117 Ill. 2d 417, 421-22, 512 N.E.2d 1223 (1987). The Act should be liberally construed to effectuate this purpose. *Meyer*, 135 Ill. 2d at 8; *Vuletich*, 117 Ill. 2d at 422.

Plaintiff and Culinary Foods first argue that the trial court erred in finding that American Igloo was not "in charge of the work."

To maintain a cause of action against a defendant under the Structural Work Act, the plaintiff must establish, among other elements, that defendant "had charge of the work" which proximately caused the injury. *Cockrum v. Kajima International, Inc.*, 163 Ill. 2d 485, 491, 645 N.E.2d 917 (1994). More than one entity may be deemed to be "in charge of" the work within the meaning of the Act. *Emberton v. State Farm Mutual Automobile Insurance Co.*, 71 Ill. 2d 111, 123, 373 N.E.2d 1348 (1978). The determination of whether a defendant is a person "having charge of" the work is primarily a question of fact for the jury, which involves numerous factors, including those enunciated in *Chance v. City of Collinsville*, 112 Ill. App. 3d 6, 11, 445 N.E.2d 39 (1983). See *Cockrum*, 163 Ill. 2d at 492; *Simmons v. Union Electric Co.*, 104 Ill. 2d 444, 452, 473 N.E.2d 946 (1984).

■ Those factors that are relevant to this inquiry include (1) supervision and control of the work; (2) retention of the right to supervise and control the work; (3) constant participation in ongoing activities at the construction site; (4) supervision and coordination of subcontractors; (5) responsibility for taking safety precautions at the jobsite; (6) authority to issue change orders; (7) the right to stop the work; (8) ownership of the equipment used on the jobsite; (9) defendant's familiarity with construction customs and practices; and (10) defendant's ability to assure worker safety or alleviate equipment deficiencies or improper work habits. *Cockrum*, 163 Ill. 2d at 492-93, citing *Chance*, 112 Ill. App. 3d at 11. All 10 of these factors need not be satisfied in order to find a defendant liable under the Act. See *Zukauskas v. Bruning*, 179 Ill. App. 3d 657, 534 N.E.2d 680 (1989). Whether a party had charge of the work so as to render it accountable under the statute involves an assessment of the totality of the circumstances. *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.*, 76 Ill. 2d 481, 490, 394 N.E.2d 403 (1979). In keeping with the statutory intent of protecting those involved in ultrahazardous work,

liability may attach to any and all persons or entities who, because of their ownership of the faulty equipment, their knowledge of work practices or their duty to ensure the safety of the construction site, knew or should have known of the violation that gave rise to the cause of action. *Mahoney v. 223 Associates*, 245 Ill. App. 3d 562, 566, 614 N.E.2d 249 (1993).

■ In the case at bar, American Igloo owned the scaffold used by plaintiff and was familiar with construction customs and practices. However, these circumstances alone are insufficient to support a finding that American Igloo was "in charge of the work" as contemplated by the statute. There is no evidence that American Igloo supervised or controlled the overall reconstruction project or the work to be performed by plaintiff on the MDF located in the shipping and receiving area, nor did American Igloo retain the right to supervise and control the work. In addition, American Igloo was not involved in the supervision and coordination of the other contractors, had no responsibility for taking safety precautions at the jobsite, and did not have authority to issue change orders or to stop the work. Its participation in ongoing activities at the construction site did not involve the work of the plaintiff or any other contractors, and it lacked the ability to assure worker safety or alleviate equipment deficiencies or improper work habits for anyone other than its own employees.

While the determination of whether a defendant had charge of the work has generally been held to be for the trier of fact, this issue may be determined as a matter of law where the evidence presented is insufficient to create a factual question. *Norton*, 76 Ill. 2d at 486. Based upon the record before us, we hold that the trial court correctly found, as a matter of law, that American Igloo was not "in charge of the work" as contemplated by the Structural Work Act.

We next review the determination that American Igloo could not be held liable under a theory of common-law negligence.

The trial court found that because there was insufficient evidence to find American Igloo was "in charge of the work" under the Structural Work Act, then it could not be held liable under the common-law theory of negligence. The cases that were apparently relied upon by the trial court (*Apostal v. Oliveri Construction Co.*, 287 Ill. App. 3d 675, 678 N.E.2d 756 (1997); *Axen v. Ockerlund Construction Co.*, 281 Ill. App. 3d 224, 666 N.E.2d 693 (1996); *Burger v. Prairie Development, Ltd.*, 218 Ill. App. 3d 814, 578 N.E.2d 1113 (1991)) are factually distinguishable from the case at bar and are not controlling here. In each of these cases, the court ruled that if there was not a sufficient nexus to find a defendant "in charge of the work" under the Structural Work Act, then there likewise was no common law duty in

tort. We note, however, that the holdings in these cases were premised upon determinations that common-law duties could not be imposed where the defendants had virtually no connection with the work and had done nothing to create the risk of injury to the plaintiffs.

These facts are not present in the instant case. Here, the plaintiff has alleged that American Igloo created a dangerous condition that it knew or should have known presented a risk to the plaintiff.

■ In order to prevail on a negligence claim, a plaintiff must show a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140, 554 N.E.2d 223 (1990).

It is axiomatic that every person owes to all others a duty to exercise ordinary care to guard against injury which naturally flows as a reasonably probable and foreseeable consequence of his act, and that such duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons. *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 86, 199 N.E.2d 769 (1964), citing *Kahn v. James Burton Co.*, 5 Ill. 2d 614, 622, 126 N.E.2d 836 (1955); *Wintersteen v. National Cooperage & Woodenware Co.*, 361 Ill. 95, 103, 197 N.E. 578 (1935); Restatement of Torts § 311(2) (1934).

■ The Illinois Supreme Court has held that "[o]ne engaged in the construction of a building owes to another not in his employ, engaged in the same work and exercising due care for his own safety, the duty of using reasonable care to avoid injuring him." *Ziraldo v. W.J. Lynch Co.*, 365 Ill. 197, 201, 6 N.E.2d 125 (1936); see also *Leatherman v. Schueler Brothers, Inc.*, 40 Ill. App. 2d 56, 62, 189 N.E.2d 10 (1963); *Zebell v. Saufnauer*, 38 Ill. App. 2d 289, 293-94, 187 N.E.2d 320 (1962). Thus, a contractor whose servants are engaged upon work about which the servants of another contractor are engaged owes the duty of ordinary care in performing his work in such a way as not negligently to injure the servants of the other. *Zebell*, 38 Ill. App. 2d at 297 (Bryant, P.J., dissenting), citing *Ziraldo*, 365 Ill. at 201; *Markus v. Lake County Ready-Mix Co.*, 6 Ill. App. 2d 420, 427, 128 N.E.2d 370 (1955); *Fetzer v. Noel Construction Co.*, 175 Ill. App. 401, 403 (1912); *Variety Manufacturing Co. v. Landaker*, 129 Ill. App. 630, 633 (1906).

■ The annotation appearing at 55 A.L.R.4th 725 details the duty and liability of a subcontractor to an employee of another contractor using the equipment or apparatus of the former. This annotation points out that the subcontractor whose equipment was in use at the time of the injury may be held liable if it can be shown that the subcontractor, in the exercise of reasonable care, might reasonably have anticipated its use by the employee or employees of other contractors or subcontractors on the job. See for example *De Luca v. Fehl-*

*haber Corp.*, 38 Misc. 2d 184, 237 N.Y.S.2d 852 (1963); see generally Annotation, *Duty & Liability of Subcontractor to Employee of Another Contractor Using Equipment or Apparatus of Former*, 55 A.L.R.4th 725, § 13(a) (1987 & 1999 Supp.). In addition, courts have found sufficient to raise a question of fact evidence that the owner of a scaffold had partially dismantled the structure on the day before the accident, resulting in the inference that the scaffold owner had created a hazardous condition. See *Parker v. State Farm Fire & Casualty Co.*, 348 So. 2d 91 (La. App. 4th Cir. 1977); Annotation, *Duty & Liability of Subcontractor to Employee of Another Contractor Using Equipment or Apparatus of Former*, 55 A.L.R.4th 725, § 2(b) (1987 & 1999 Supp.).

■ In determining whether to impose a duty in such cases, the critical question is whether it was reasonably foreseeable that the employees of other contractors or subcontractors on the job would use the apparatus or equipment placed on the site by the defendant. See *Nelson*, 31 Ill. 2d at 86; *Zebell*, 38 Ill. App. 2d at 294; *Leatherman*, 40 Ill. App. 2d at 61-62.

■ In the instant case, the record indicates that American Igloo employees partially dismantled and folded the scaffold a day or two prior to the plaintiff's arrival on the site and left it against the wall directly beneath the MDF in the shipping and receiving area. Hartley, American Igloo's foreman, testified that the partially folded scaffold, with two wooden planks on top, was not safe for use as a support. In addition, he knew that Davis had arranged to have the telephone wiring in that area tested, and he knew that this was the next job they had lined up. It was obvious that the MDF was mounted on the wall between five and eight feet from the floor and that the person who would test the telephone wires would need to use a scaffold or support in order to do that work. According to plaintiff, the scaffold seemed secure based upon his assessment after giving it a shake before he climbed onto it. In addition, Roger Kirwin, the production manager for Culinary Foods, testified that the scaffold was "put together" on the day of the accident.

Based upon this evidence, we hold that it was foreseeable that plaintiff would use the scaffold to gain access to the MDF in order to test the telephone wiring. American Igloo had the opportunity and duty to foresee the presence of the plaintiff and the danger to him. In addition, the likelihood of the occurrence was great where there was a risk the scaffold would open or become unstable because some of the supports had been removed. The magnitude of the burden of guarding against the injury and the consequences of placing the burden upon the defendant were minimal. American Igloo could easily have posted a simple notice indicating that the scaffold was not fully assembled

and could not safely be used as a support or platform, or the American Igloo workers who had dismantled and folded the scaffold could have removed the wooden planks, which would have prevented its use as a support or platform and would have allowed the scaffold to be folded to a width of six to eight inches. A jury could conclude that if American Igloo had acted with reasonable care, it could have avoided or prevented the hazardous condition that led to plaintiff's injury.

We hold, therefore, that American Igloo had a common-law duty to exercise reasonable care to protect plaintiff or other workers from injury caused by its partially dismantled scaffold. American Igloo cannot avoid its common-law duty by claiming that it was not "in charge of the work" within the meaning of the Structural Work Act.

For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with the views expressed herein.

Affirmed in part, reversed in part, and remanded.

CAMPBELL and O'BRIEN, JJ., concur.