LaSALLE NATIONAL TRUST, NA, as Trustee, *et al.*, Plaintiffs-Appellees, v. THE BOARD OF DIRECTORS OF THE STATE PARKWAY CONDOMINIUM ASSOCIATION, Defendant-Appellant (Alan O. Amos *et al.*, Intervening Plaintiffs-Appellees).

First District (3rd Division)    No. 1—00—2062

Opinion filed December 19, 2001.

Jordan Cramer and Gary I. Blackman, both of Levenfield, Pearlstein, Glassberg, Tuchman, Bright, Goldstein & Schwartz, of Chicago, for appellant.

Lee M. Weisz, of Braun & Rivkin, Ltd., of Chicago, for appellees LaSalle National Trust, NA, and Howard M. Robinson.

Alan O. Amos, of Alan O. Amos & Associates, P.C., of Chicago, for other appellees.

PRESIDING JUSTICE HALL delivered the opinion of the court:

The plaintiffs, LaSalle National Trust, NA, as trustee under Trust number 116409, and Howard M. Robinson,[1] filed a complaint for declaratory judgment against the defendant, the board of directors of the State Parkway Condominium Association (the Board). The complaint sought a judicial determination of the rights and obligations of the parties with respect to the furnishing of electricity to a condominium unit owned by the plaintiffs. The trial court granted the motion of

---

[1] It was acknowledged at oral argument that Mr. Robinson was the developer of the project.

Alan O. Amos and Marcia Lazar (the intervenors) to intervene and file a complaint. The Board filed a counterclaim seeking a judgment against the plaintiffs for unpaid assessments.

All parties filed motions for summary judgment. The trial court granted the summary judgment motions of the plaintiffs and the intervenors and denied the Board's motion for summary judgment. The Board appeals.

The sole issue on appeal is whether the trial court erred in granting summary judgment to the plaintiffs and the intervenors and denying summary judgment to the Board.

The following facts are taken from the pleadings and the affidavits in the record.

An entity known as the 1445 Limited Partnership (the developer) renovated and converted the property at 1445 North State Parkway to condominium ownership. On or about November 5, 1992, the developer recorded a declaration of condominium ownership and easements, restrictions, covenants and bylaws (the Declaration) for the State Parkway Condominium. As of April 18, 1994, 75% of the condominium units had been sold. In accordance with the terms of the Declaration, an initial meeting of the owners took place at which time a unit-owner controlled board of directors was elected.

In the spring of 1995, it was discovered that the building's electrical service was inadequate to provide power to unit 2701, owned by the plaintiffs, and to unit 2703, owned by the intervenors, both of which occupied the twenty-seventh and twenty-eighth floors of the building. Prior to the renovation, the twenty-eighth floor had not been used for residential purposes, but had housed a laundry room, storage areas and housing for mechanical elements that served the entire property.

On or about July 31, 1995, the developer granted a nonexclusive easement to the plaintiffs and the intervenors to allow them to access an existing electrical line running to the twenty-eighth floor which provided power for the common elements. The easement grant provided that the unit owners would reimburse the Board for the electrical power usage at the same rate paid by the Board to the electrical service provider and pay a fee, not to exceed 5% of the cost of electrical power used by each unit, to the Board to reimburse administrative costs. The plaintiffs and the intervenors paid for the installation of transformers and meters to facilitate the supply of electricity to their units. Commonwealth Edison charged an industrial rate for electrical usage with respect to the utility line that provided electrical power to units 2701 and 2703.

On or about February 18, 1997, the Board granted to the owners

of units 2701 and 2703 a perpetual, nonexclusive easement to connect to an electric utility line serving the common elements of the building for the purpose of providing electrical power to those units. The easement grant further provided that the cost of the electricity would be charged at the residential rate plus tax and that a fee of 5% of the electric cost would be charged to cover the Board's administrative costs.

Based upon its easement grant, the Board demanded that the plaintiffs and the intervenors pay the Board for electrical service and the applicable taxes at the residential rate, even though the Board paid for electrical power based upon the industrial rate, which was lower than the residential rate. In response, the plaintiffs filed a complaint for declaratory judgment against the Board, in which they were joined by the intervenors. The Board filed a counterclaim for unpaid assessments and related charges against the plaintiffs.

All parties filed motions for summary judgment. The circuit court granted summary judgment to the plaintiffs and the intervenors and denied summary judgment to the Board. This timely appeal followed.

## I. Standard of Review

■ Summary judgment is proper only where the pleadings, depositions, admissions, and affidavits demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Cozza v. Culinary Foods, Inc.*, 311 Ill. App. 3d 615, 619, 723 N.E.2d 1199, 1203 (2000). In this case, neither party asserts that material questions of fact exist, and therefore, summary judgment is appropriate in this case. Because the propriety of an order granting summary judgment involves a question of law, the reviewing court considers the matter *de novo*. *Cozza*, 311 Ill. App. 3d at 619-20, 723 N.E.2d at 1203.

## II. Discussion

The question to be resolved in this case is which easement controls, the one recorded by the developer or the one recorded by the Board. The Board's right to grant an easement is not contested by the plaintiffs and the intervenors.

■ When a controversy regarding the rights of a condominium unit owner in a condominium arises, the court must examine any relevant provisions of the Condominium Property Act (the Act) (765 ILCS 605/1 *et seq.* (West 1994)) and the Declaration or bylaws and construe them as a whole. *Carney v. Donley*, 261 Ill. App. 3d 1002, 1008, 633 N.E.2d 1015, 1020 (1994).

The Board maintains that nothing in the Act grants a developer the right to create a perpetual easement after ceding control of the

board to the unit owners. However, it is equally true that there is nothing in the Act which expressly denies to a developer the right to create an easement after control of the property has passed to the board of directors but while the developer still retains an interest in the property. Therefore, the resolution of this issue rests upon the provisions of the Declaration. See *Carney*, 261 Ill. App. 3d at 1008, 633 N.E.2d at 1020.

■ Where the facts are not disputed and because condominium declarations are covenants running with the land, the court need only examine the language of the Declaration, to the extent that the language is unambiguous, to determine whether summary judgment for either party was proper. *Carney*, 261 Ill. App. 3d at 1008, 633 N.E. 2d at 1020. " 'The paramount rule for the interpretation of covenants is to expound them so as to give effect as to the actual intent of the parties as determined from the whole document construed in connection with the circumstances surrounding its execution.' [Citation.]" *Carney*, 261 Ill. App. 3d at 1008, 633 N.E.2d at 1020.

With regard to the granting of easements, the Declaration in this case provides in pertinent part as follows:

"3.17 *Utility Easements.* The *** public utilities serving the Property are hereby granted the right to lay, construct, renew, operate, repair, replace and maintain *** equipment, into and through the Common Elements for the purpose of providing utility services to the Property, together with the reasonable right to ingress to and egress from the Property for said purpose. *The Developer, Trustee or Board may hereafter grant other or additional easements, for utility or entertainment purposes for the benefit of the Property over, under, along and on any portion of the Common Elements, and each Owner, by acceptance of a Deed of Conveyance with respect to each Unit, hereby grants the Board an irrevocable power of attorney to execute, acknowledge and record or register *** such instruments as may be necessary to effectuate the foregoing.*

\* \* \*

3.21 *Blanket Easement in Favor of Trustee and Other Parties.* The right of the Unit Owners to use and possess the Common Elements as set forth in Section 3.09 shall be subject to a blanket easement over the Common Elements in favor of the Trustee and the Developer *** and assigns, for the purpose of (i) access and ingress to and egress from the Property or any part thereof, (ii) construction, installation, repair, replacement and restoration of utilities, buildings, landscaping and any other improvements on the Parcel or any part thereof, including the right to restrict and regulate access to the Common Elements for the purposes of

completing, remodeling, rehabilitating and other construction of the Building, Common Elements or Units in the Building, and (iii) the installation and maintenance of signs advertising the residences on the Parcel or any part thereof, and signs directing potential purchasers to the sales office and models erected in connection with such residences, and for such purposes as are described in Section 7.01(k) hereof. *The foregoing easements in favor of the Trustee and the Developer shall continue until such time as neither the Trustee nor the Developer holds legal title to, or the beneficial interest in any trust holding legal title to, any Unit Ownerships, at which time such easements shall cease and be of no further force and effect without the necessity of further action."* (Emphasis added.)

The Board contends that the developer lost the right to record any easements as of April 18, 1994, when control of the property was turned over to the unit owners upon the election of the first unit-owner board of directors, and therefore, only the Board had the right to grant an easement after that date.

In this case, section 5.06 of the Declaration provided as follows:

"(a) The initial Board of Directors designated by the Trustee or Developer pursuant to Section 5.01 hereof shall consist of five (5) directors who shall serve without compensation. Such initial Board shall serve for a period commencing on the date this Declaration is Recorded and ending upon the qualification of the directors elected at the initial meeting of Voting Members held as provided in Section 5.04(b) hereof."

Section 5.06 is in accordance with section 18.2 of the Act, which provides in pertinent part as follows:

"(a) Until election of the initial board of managers, the same rights, titles, powers, privileges, trusts, duties and obligations vested in or imposed upon the board of managers by this Act and in the declaration and bylaws shall be held and performed by the developer.

(b)(i) The election of the initial board of managers shall be held not later than 60 days after the conveyance by the developer of 75% of the units, or 3 years after the recording of the declaration, whichever is earlier." 765 ILCS 605/18.2(a), (b)(i) (West 1994).

In addition, pursuant to section 5.06(f) of the Declaration, once the board is elected, the developer is required to turn over to the elected board the condominium documents, funds, schedules of property and the like. See also 765 ILCS 605/18.2(d) (West 1994).

■ Under the above Declaration provisions, we conclude that the parties intended that upon the election of the board of directors by the unit owners, control of the property would pass from the developer to

the Board, which would assume the powers formerly exercised by the developer.

However, we must now determine if under the Declaration provisions the developer retained any authority to grant an easement even though control of the property had passed to the Board.

The Board argues that section 3.21 does not authorize the developer to grant a permanent utility easement because a utility easement is not one of the specific purposes for easements listed in section 3.21 and because under section 3.21, such easements are temporary.

The plaintiffs and the intervenors respond, first, that the Board failed to raise those arguments before the circuit court and, therefore, it may not raise them before this court. However, the plaintiffs and the intervenors acknowledge that they relied upon section 3.21 in their argument for summary judgment before the circuit court. In fact, in rendering its decision in this case, the circuit court read the pertinent portions of both section 3.17 and section 3.21 into the record. In any event, the rule of waiver is an admonition to the litigants, not a limitation upon the jurisdiction of the reviewing court. *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 480, 584 N.E.2d 116, 118 (1991).

The plaintiffs and intervenors contend that the developer had the absolute right under the Declaration to make the July 31, 1995, grant of easement. They maintain that section 3.17 expressly confers upon the developer the right to grant utility easements, and section 3.21 conferred such power upon the developer until such time as the last unit in the project had been sold, which did not occur until April 2000.

Under section 3.21, the developer has a blanket easement for "(ii) construction, installation, repair, replacement and restoration of utilities." However, section 3.21 further provides that the "foregoing easements," as opposed to the right to grant an easement, "in favor of *** the Developer *** and assigns" continue only until the developer no longer has any legal or beneficial interest in the units. The trial court interpreted that as meaning until the developer as the developer no longer had an interest in the units as opposed to the developer as a unit owner. None of the parties in this case dispute that interpretation.

Contrary to the arguments of the parties in this case, we are of the opinion that section 3.21 has no bearing on the developer's continuing right to grant an easement. First, unlike section 3.17, under section 3.21 the developer does not have the power to grant an easement. Instead, section 3.21 grants to the developer a blanket easement, which may be assigned, for certain specified purposes, all of

which concern the completion of the building and allow the developer to continue to work in the building even though the Board has taken over the building's management. This conclusion is supported by the fact that the easements under section 3.21 are of limited duration, ending once the developer no longer has an interest in the property.

Turning to section 3.17, that section gives the developer, the trustee or the Board the right to establish utility easements. Read by itself, the language of section 3.17 suggests that the developer has the power to grant an easement at any time, regardless of whether the developer still had an interest in the property as the developer. However, section 3.17 must not be read in isolation but must be construed in light of the other provisions of the Declaration.

■ Construing section 3.17 together with the other provisions of the Declaration discussed above, we determine that the intent of the parties was to pass control of the property from the developer to the unit owners, who would, through their elected board of directors, assume the powers formerly exercised by the developer, such as the granting of easements. The fact that section 3.17 specifies the "Developer, Trustee or Board" indicates that the power to grant the easement was intended to be exercised by whichever of the three entities was in control at the time the easement was sought. Once control was placed with the Board, the developer no longer had the right under section 3.17 to grant an easement.

Our interpretation is supported by the language in section 3.17 specifying that the unit owners grant to the Board the power of attorney to execute, acknowledge and record the documents necessary to establish the easements under that section. The fact that the unit owners granted the power of attorney to the Board and not to the developer or the trustee is further acknowledgment that, once the Board was in existence, neither the developer nor the trustee retained any power to grant easements.

Finally, we are of the opinion that the provisions of the Act which require the transference of authority from the developer to the board of managers would be undermined if the developer were allowed to exercise the power to grant easements long after it ceased to have an interest in the property. See 765 ILCS 605/18.2 (West 1994).

Therefore, the circuit court erred in awarding summary judgment to the plaintiffs and the intervenors. Since there are no issues of material fact and no issue has been raised as to the right of the Board to grant an easement, this case is remanded to the circuit court for entry of an order granting the Board's motion for summary judgment and for a determination of the judgment amount of the Board's counterclaim against the plaintiffs.

The judgment of the circuit court of Cook County is reversed and the cause remanded with directions.

Reversed and remanded with directions.

CERDA and BURKE, JJ., concur.