NOTICE
Decision filed 10/07/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 210007-U

NO. 5-21-0007

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| CLIFFORD JERMAN and LORA JERMAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Wayne County. |
| | ) | |
| v. | ) | No. 19-L-9 |
| | ) | |
| WOOLSEY OPERATING COMPANY, LLC, | ) | |
| and FRANKLIN WELL SERVICES, INC., | ) | Honorable |
| | ) | Michael J. Molt, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Wharton concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court's order granting summary judgment for defendants is affirmed where plaintiffs' amended complaint stated a claim for negligent infliction of emotional distress and plaintiff failed to sustain a direct injury and was not a bystander.

¶ 2   Plaintiffs, Clifford Jerman (Clifford) and Lora Jerman (Lora), appeal from the trial court's order granting summary judgment to Woolsey Operating Company, LLC (Woolsey) and Franklin Well Services, Inc. (Franklin) (collectively defendants), claiming their amended complaint did not state a claim for negligent infliction of emotional distress (NIED). Plaintiffs also argue, in the alternative, that even if the claim was a NIED claim, no direct victim was required because Clifford was a bystander in the zone of danger. For the following reasons, we affirm.

1

¶ 3                          I. BACKGROUND

¶ 4     On January 27, 2014, Clifford, a truck driver hired by Linde North America (Linde), hauled and delivered liquid nitrogen to a SAMS well in Wayne County, Illinois. Upon arrival, Clifford parked his truck approximately 20 yards from the wellhead with the rear of his trailer facing the wellhead. A smaller tanker truck was in between Clifford's truck and the wellhead. The hose on Clifford's truck pumped nitrogen from his truck to the smaller tanker truck, which heated up the nitrogen and pumped it into the well. Clifford was standing between the two trucks, which were 10 feet apart. He was almost to the end of his tank when the guy wire started shimmying. The pressure reached 8600 psi and resulted in a casing failure that caused 650 feet of 5½-inch casing, along with nitrogen foam, to eject from the well. Clifford and the other parties at the site ran toward the levee, which was the predetermined meeting place in the event of an accident. Once Clifford reached the levee, he got into a car with another Linde employee and waited for the well to stop ejecting material. Thereafter, he went back to pick up his hard hat and removed the broken hose from his truck. Neither Clifford nor anyone else at the location was struck by the fragments emanating from the well. Following the incident, Clifford took photos of the site and spent the night in a motel, as he had worked the maximum number of hours for one day allowed by Linde. The Linde representative followed him to the motel to make sure he was okay. He later had dinner in the restaurant at the motel but had a hard time sleeping. He woke up at 2 a.m. but could not leave because he had not gotten past the 10-hour off-work limit yet. Later that morning, Clifford drove his truck back to Linde's terminal, dropped off his stuff, and went home. He did not go into work on Wednesday because the terminal manager told him to take some time off. His employer recommended counseling, and Clifford's first visit was on January 30, 2014. He was eventually diagnosed with PTSD and has not driven a tractor trailer since the incident.

¶ 5    On January 26, 2016, Clifford and Lora filed a 10-count complaint against the operators and servicers of the well (Woolsey, Franklin, Les Wilson, Inc., and C&J Well Services) and Clifford's employer (Linde) in Madison County, Illinois. Plaintiffs filed one count of negligence and one count of loss of consortium against each defendant. Each count of negligence alleged that Clifford was in the "zone of danger" while unloading the liquid nitrogen and that debris hit him and his truck after the explosion occurred.

¶ 6    Subsequently, the trial court granted plaintiffs' motions to voluntarily dismiss defendants Linde, Les Wilson, Inc., and C&J Well Services, and the remaining defendants filed a motion to transfer for wrongful venue or, in the alternative, motion to transfer for *forum non conveniens*. On January 29, 2019, plaintiffs moved to amend the complaint due to the dismissal of three of the defendants and the misspelling of one name. The trial court granted the motion on February 5, 2019, and plaintiff's first amended complaint was filed the same day.

¶ 7    The amended complaint consisted of four counts: counts I and II were against Woolsey and counts V and VI were against Franklin. Counts I and V alleged negligence, and paragraph 6 of both counts alleged, "That at the aforesaid date and place a blowout explosion occurred while Plaintiff was in the 'zone of danger' and debris hit him and the truck he was unloading."

¶ 8    In paragraph 7 of counts I and V, plaintiff alleged that the defendants were

"guilty of one of more of the following negligent acts or omissions:

a. Improperly operated, managed, maintained and controlled the fracking at the well site;

b. Failed to warn the Plaintiff of the dangerous condition of said well operations;

c. Failed to properly fence off an appropriate setback from the well thereby allowing the Plaintiff and others to be in the 'zone of danger';

3

d. Caused an explosion in the well that sent debris at the Plaintiff and the truck he was unloading; [and]

e. Exceeded the pressure limit of the casing causing a blow out explosion."

¶ 9    In paragraph 8, the plaintiff alleged:

"That as a direct and proximate result of one or more of the aforesaid acts or omissions of the Defendant, Plaintiff then and there suffered severe and permanent injuries, internally, and was and will be hindered and prevented from attending to usual duties and affairs, employment, and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain both in body and mind, and will in the future continue to suffer. Plaintiff further has experienced and become liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries."

Counts II and VI were Lora's loss of consortium claims against Woolsey and Franklin, respectively.

¶ 10    On April 26, 2019, the trial court entered an order noting that only two of the original five defendants remained in the case and that neither remaining defendant owned property, maintained an office, or did business in Madison County. The trial court found that Clifford's post-injury treatment was performed in Madison County, but his alleged injury occurred in Wayne County. Thereafter, the trial court granted defendants' motion to transfer venue to Wayne County.

¶ 11    On August 19, 2020, Woolsey and Franklin filed a joint motion for summary judgment based on the "zone of danger" language in the first amended complaint and contended that based on Clifford's deposition testimony, the elements for a NIED claim could not be met. The deposition testimony stated:

"Q. *** Did you sustain any physical injury in the incident?

A. Not that I'm aware of.

* * *

Q. Did anything hit you?

A. Stuff was close.

Q. Did anything hit you?

A. I don't think so.

Q. Did anything hit your vehicle?

A. Yes.

* * *

Q. Let me ask you this. After this accident, did you have any physical sign of injury, any cut, any bruise, any swelling, any mark?

A. Not that I'm aware of.

Q. Okay. Was anyone injured in the incident?

A. I don't know."

¶ 12    The defendants' motion claimed Clifford was not a "direct victim" because he was not personally injured in the incident. The motion further claimed that Clifford was not a bystander because he did not witness anyone being injured in the zone of danger. Defendants claimed that because Clifford's claim was a NIED claim, his claim failed as a matter of law, and Lora's derivative claim failed as well.

¶ 13    Plaintiffs filed a response on October 20, 2020, stating Clifford was within the "zone of danger" of the well explosion solidifying his NIED claim. Plaintiffs argued that a person was "*not precluded from bringing a bystander claim for negligent infliction of emotional distress simply*

because another person was not injured in the explosion resulting from a defendant's negligence." (Emphasis in original.) The key question was "whether the bystander was within the zone of danger and as a result had a reasonable fear for his own safety causing physical injury or illness resulting from emotional distress." As such, plaintiffs argued that Clifford's claim did not fail as a matter of law, and therefore his wife's consortium claim did not fail either.

¶ 14    On November 5, 2020, defendants filed a reply in support of the joint motion for summary judgment solely disputing Clifford's claim that all he was required to show for a NIED claim was that he was in the "zone of danger," noting that all the cases relied on by plaintiffs required and contained a direct victim before the bystander who was in the zone of danger could recover for a NIED claim.

¶ 15    On November 16, 2020, the trial court heard oral argument. At that time, plaintiffs claimed, for the first time, that their complaint was not a NIED claim but was instead a "straight-out negligence claim."

¶ 16    On December 29, 2020, the trial court issued summary judgment for defendants. The court found that Clifford's claim was a NIED claim, and that Clifford was not a direct victim because he was not physically injured by the incident. The court also found that Clifford was not a bystander because he was "not in such proximity to the accident in which the direct victim was physically injured" as there was no "direct victim." Plaintiffs timely filed their notice of appeal on January 8, 2021.

¶ 17    On May 27, 2021, defendants filed a joint motion to strike portions of plaintiffs' reply brief and plaintiffs responded on June 9, 2021. Pursuant to this court's June 25, 2021, order, the motion and response were taken with the case.

¶ 18                                   II. ANALYSIS

¶ 19    We first consider defendants' motion to strike section A of plaintiffs' reply brief argument which defendants claimed was violative of Illinois Supreme Court Rule 341(j) (eff. Oct. 1, 2020). Defendants contend that plaintiffs' argument, based on a purported claim of negligence stemming from 62 Ill. Adm. Code 245.540 and 245.835, was improper because the argument was not raised in plaintiffs' initial brief. In response, plaintiffs contend the issue was properly raised in their reply brief because the issue was raised in numerous locations during its briefing and cited portions of the record where such argument was made.

¶ 20    Illinois Supreme Court Rule 341(j) provides that "[t]he reply brief, if any, shall be confined strictly to replying to arguments presented in the brief of the appellee and need contain only Argument." Ill. S. Ct. R. 341(j) (eff. Oct. 1, 2020). It is well-settled that "arguments not raised in a party's opening brief may not be raised in its reply brief or at oral argument." *Three Angels Broadcasting Network, Inc. v. Department of Revenue*, 381 Ill. App. 3d 679, 699 (2008). In such instances, the appellant's failure results in forfeiture of the issue. *People ex rel. Village of Vernon Hills v. Village of Lincolnshire*, 283 Ill. App. 3d 266 (1996).

¶ 21    Section A of plaintiffs' reply brief argues that the amended complaint sufficiently sets forth the underlying negligence of defendants by violating 62 Ill. Adm. Code 245.540 (eff. Nov. 14, 2014) and 62 Ill. Adm. Code 245.835 (eff. Nov. 14, 2014) when the pressure limit of the well casing was exceeded. However, review of the amended complaint reveals neither any mention of the regulatory sections nor any allegation that defendants violated any regulation. Further, while plaintiffs' initial brief mentioned the regulations in its statement of facts, at no time did the plaintiffs provide any argument regarding the regulations in the initial brief. "If a point is not

7

argued, it is waived and may not be raised in a reply brief, oral argument or petition for rehearing." *Piper v. Moran's Enterprises*, 121 Ill. App. 3d 644, 649 (1984).

¶ 22 "Supreme court rules are not advisory suggestions, but rules to be followed." *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. As the plaintiffs failed to provide any argument regarding the regulatory issue in their initial brief, argument of the issue in the reply brief was improper and forfeited pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). Accordingly, section A of plaintiffs' reply brief is stricken.

¶ 23 We now turn to the trial court's summary judgment for defendants. "Summary judgment is a drastic remedy to be granted only where the movant's right to it is clear and free from doubt." *Cozza v. Culinary Foods, Inc.*, 311 Ill. App. 3d 615, 619 (2000). We review the trial court's entry of summary judgment *de novo. Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 15. *De novo* review means we perform "the same analysis that a trial court would perform." *Khan v. BDO Seidman, LLP*, 408 Ill App. 3d 564, 578 (2011).

¶ 24 "In reviewing a court's grant of a summary judgment, this court must construe the pleadings, admissions, depositions, and affidavits strictly against the movant and liberally in favor of the opponent of the motion." *Morgan v. Richardson*, 343 Ill. App. 3d 733, 739 (2003). "Reasonable inferences drawn from the facts must also be resolved in favor of the opponent of the motion." *Id.* "A defendant moving for summary judgment bears the initial burden of proof." *Siegel Development, LLC v. Peak Construction LLC*, 2013 IL App (1st) 111973, ¶ 109. A defendant meets the burden of proof either by "showing that some element of the case must be resolved in his favor or by establishing that there is an absence of evidence to support the nonmoving party's case." (Internal quotation marks omitted.) *Id.* A motion for summary judgment is properly granted only where the pleadings, depositions, admissions, and affidavits establish that no genuine issue

of material fact exists and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020); *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 25.

¶ 25    On appeal, plaintiffs contend that an issue of fact, namely whether Clifford's claim was for negligence or NIED, precluded summary judgment. Plaintiffs also contend, in the alternative, that, even if the claim was properly classified as a NIED claim, Clifford's recovery as a bystander was not precluded by the lack of a direct victim. Defendants contend the claim was properly classified as a NIED claim, the lack of a direct victim precludes recovery for a bystander in a NIED claim, and therefore urge affirmation of the trial court's summary judgment.

¶ 26    Given the dispute, we initially address the history of and the requirements for a NIED claim. Prior to *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546 (1983), "recovery for negligently caused emotional distress suffered by the direct victim or a bystander who witnesses the injury of another [was] consistently denied unless it was accompanied by a contemporaneous physical injury to or impact on the plaintiff." *Id.* at 550 (citing *Braun v. Craven*, 175 Ill. 401 (1898), *Carlinville National Bank v. Rhoads*, 63 Ill. App. 3d 502 (1978), *Kaiserman v. Bright*, 61 Ill. App. 3d 67 (1978), and *Neuberg v. Michael Reese Hospital & Medical Center*, 60 Ill. App. 3d 679 (1978)). This was known as the "impact rule." *Id*. at 553.

¶ 27    In *Rickey*, an eight-year-old boy, filed a claim for emotional distress after watching his five-year-old brother's clothes become entangled in an escalator which resulted in the brother choking and passing out from lack of oxygen. *Id.* at 548-49. On appeal, the question presented was whether a bystander who did not suffer physical injury or impact at the time of the occurrence could recover damages for emotional distress which resulted from witnessing an injury to his brother caused by the defendants' negligence. *Id.* at 549. Answering the question in the affirmative, the Illinois Supreme Court substituted the "impact rule" with the "zone-of-physical-danger rule."

9

*Id.* at 555. Under the zone-of-physical-danger rule, "a bystander who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress." *Id.* The court stated the "rule does not require that the bystander suffer a physical impact or injury at the time of the negligent act, but it does require that he must have been in such proximity to the accident in which the direct victim was physically injured that there was a high risk to him of physical impact." *Id.*

¶ 28    In a 2011 decision, *Clark v. Children's Memorial Hospital*, 2011 IL 108656, the "court revisited this area of the law and concluded that things had gone badly astray." *Cochran v. Securitas Security Services USA*, *Inc.*, 2017 IL 121200, ¶ 22. In *Clark*, the defendants, *inter alia*, requested the court affirm the trial court's grant of summary judgment in favor of defendants based on its decision in *Siemieniec v. Lutheran General Hospital*, 117 Ill. 2d 230, 262-63 (1987), where the court recognized a claim for wrongful birth but denied damages for the parents' emotional distress because they could not state a claim for negligent infliction of emotional distress under the "zone-of-danger rule." *Clark*, 2011 IL 108656, ¶ 23. *Clark* noted that "where the claim of emotional distress is freestanding and not anchored to any other tort against the plaintiff, courts have applied special restrictions such as the zone-of-danger rule because of concerns regarding the possibility of fraudulent claim or frivolous litigation." *Id*. ¶ 106 (citing *Rickey*, 98 Ill. 2d at 555). The court found, however, that the special restrictions had no logical bearing for a wrongful-birth claim, "where a tort ha[d] already been committed against the parents." *Id*. ¶ 107. "Wrongful-birth plaintiffs do not assert a freestanding emotional distress claim, but merely assert emotional distress as an element of damages for a personal tort." *Id*. " 'For these reasons the physical manifestation and zone-of-danger rules offer no occasion to reject mental distress damages in wrongful birth

cases any more than they would do so in the case of libel or invasion of privacy.' " *Id*. (quoting 2 Dan B. Dobbs, Law of Remedies § 8.2, at 414 (2d ed. 1993)). The court found its prior decision in *Siemieniec* erroneous (*id*. ¶ 109), stating the "nature of the error is evident when one considers that the damages for emotional distress are available to prevailing plaintiffs in cases involving other personal torts such as defamation [citation]; conversion [citation]; and misappropriation of identity [citation]." *Id*. ¶ 111. The court concluded by holding

> "that the zone-of-danger rule applies only in cases where the plaintiff's theory of
> liability is the negligent infliction of emotional distress. It does not apply where, as
> in a wrongful-birth case, a tort has already been committed against the plaintiffs
> and they assert emotional distress as an element of damages for that tort." *Id*. ¶ 113.

¶ 29    In *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, the court again addressed a NIED claim, this time related to a foreclosed home. In *Schweihs*, the plaintiff continued to live in the home and was trying to sell it during the redemption period. *Id.* ¶ 13. The mortgagor contracted with Safeguard to perform an inspection on the house after the foreclosure proceeding. *Id.* ¶ 5. A subcontractor for Safeguard, believing the house was empty, entered the home, startling the plaintiff, and police were called. *Id*. ¶¶ 12, 15. No arrests were made; however, plaintiff became fearful she would be attacked and was afraid when at the house. *Id*. ¶¶ 15-16. She eventually received treatment and medication for sleeping, post-traumatic stress, anxiety, and depression. *Id.* ¶ 16. On appeal, the issue before the Illinois Supreme Court was whether the requirement for a physical impact remained for a direct victim in a NIED case. *Id.* ¶¶ 28-30. The court answered in the affirmative and affirmed the dismissal of the NIED claim after finding the mortgagee had no "direct impact." *Id*. ¶ 44. Justice Garman issued a special concurrence that stated:

11

"In light of our reasoning in *Clark* and the majority opinion in the present case, it should be clear that when a plaintiff claims NIED, she must allege a contemporaneous physical impact or injury as a direct result of the defendant's conduct or else that she was a bystander in the zone of physical danger. If, however, she states a claim for a tort other than NIED, no such additional pleading requirement applies.

In the present case, while the plaintiff cannot state a claim for NIED in the absence of a contemporaneous physical impact or injury directly resulting from the defendants' entry into her home, her other claims [for trespass and negligent trespass] are still pending in the circuit court. Whether any of these claims succeeds, whether damages for emotional distress are available for the particular claim, and whether she proves her entitlement to such damages remain to be seen." *Id*. ¶¶ 80-81 (Garman, J., specially concurring).

¶ 30    More recently, the Illinois Supreme Court again addressed NIED claims in *Cochran v. Securitas Security Services USA, Inc*., 2017 IL 121200, a case that was not cited by either party in the case at bar. In *Cochran*, the issue involved whether plaintiff's claim of tortious interference with the right to possess a corpse required her to plead "wilful and wanton" conduct to proceed with the claim. *Id.* ¶¶ 12-13. The court confirmed that the plaintiff was only required to plead negligent conduct for a claim of tortious interference with the right to possess a corpse. *Id*. ¶ 1. In explaining the rationale for the decision, the court addressed the requirement of NIED cases, specifically addressing its decision in *Clark* and the progeny from *Rickey*, stating:

"[W]e see a similar dynamic at work. In both cases [*Siemieniec v. Lutheran General Hospital*, 117 Ill. 2d 230 (1987), and *Courtney v. St. Joseph Hospital*, 149 Ill. App.

12

3d 397 (1986)], the courts equated the rules governing the recovery of damages in NIED cases with the rules governing the recovery of emotional damages in *all* negligence cases. The result was that the recovery of emotional distress damages effectively was barred for any negligence plaintiff who neither suffered a contemporaneous injury nor satisfied the zone-of-danger rule, regardless of the tort that was actually pleaded. \*\*\*

This is where things remained until 2011, when this court revisited this area of the law and concluded that things had gone badly astray. In *Clark v. Children's Memorial Hospital* [citation], the question again arose whether parents in a wrongful birth case may recover damages for their resulting emotional distress. \*\*\* Specifically, the court explained [in *Clark*] that

> the zone-of-danger rule applies only in cases where the plaintiff's theory of liability is the negligent infliction of emotional distress. It does not apply where, as in a wrongful-birth case, a tort has already been committed against the plaintiffs and they assert emotional distress as an element of damages for that tort. [Citation.]

\*\*\* To then drive this point home, the court pointed out that damages for emotional distress are available to prevailing plaintiffs in cases involving other personal torts, including defamation, conversion, and misappropriation of identity. \*\*\*

In light of *Clark*, the critical question in the case before us is not whether plaintiff's third amended complaint alleges facts showing that she herself either suffered a contemporaneous injury or falls within the zone-of-danger rule. Rather, the critical question is whether the theory of liability set forth in that complaint is

13

NIED or, as in a wrongful birth case, some other tort for which emotional distress is simply an element of plaintiff's damages. This is because if plaintiff's claim falls into the latter of these categories, there is no principled reason to disallow the recovery of emotional distress damages upon proof of ordinary negligence." (Emphasis in original and internal quotation marks omitted.) *Id.* ¶¶ 21-23.

¶ 31 After recognizing that "interference with the right to possess a decedent's remains" was a "distinct and independent tort that has a settled place in Illinois jurisprudence," the court found that plaintiff's claim fell "into the category of cases in which 'a tort has already been committed against the plaintiffs and they assert emotional distress damages as an element of damages for that tort.' " *Id.* ¶ 24 (quoting *Clark*, 2011 IL 108656, ¶ 113).

¶ 32 We are aware of no case law positioning this claim into the realm of another tort such as a wrongful-birth claim, tortious interference with a deceased's remains claim, defamation claim, conversion claim, or misappropriation of identity claim, in which emotional distress was simply an element of plaintiff's damages because they were already injured by the defendant's actions. Contrary to the commonality seen in the cases set forth above, Clifford's testimony confirmed that neither he, nor anyone else at the well site, incurred a physical injury, and his sole injury was emotional distress.

¶ 33 To further address the proper classification of Clifford's action, we review the complaint in conjunction with the well-established law setting forth the elements for a NIED claim, which are dependent on whether the plaintiff was a direct victim of the defendant's negligence or merely a bystander. On appeal, Clifford did not contest the trial court's finding that he was not a "direct victim" because he suffered no actual impact. As such, we do not address this issue on appeal and focus solely on the bystander elements.

14

¶ 34    Where the plaintiff is a bystander to the defendant's negligence, the plaintiff must plead that he was in the "zone of danger," reasonably feared for his own safety, and suffered a physical injury or illness as a result of the emotional distress caused by the defendant's negligence. *Rickey*, 98 Ill. 2d at 555. Here, plaintiffs' complaint pled that Clifford was in the "zone of danger" and that he suffered an injury due to one or more of the defendant's negligent acts or omissions. We interpret these allegations as consistent with a theory of liability for a bystander NIED claim.

¶ 35    While plaintiffs contend on appeal that the allegations in the first amended complaint were for "freestanding negligence" and not NIED, as shown above, the complaint was well-crafted to fall within the requirements of a NIED claim, whether as a direct victim or a bystander. We further note that plaintiffs' response to defendants' motion for summary judgment failed to make this argument and the heading for their October 20, 2020, response stated Clifford "was within the 'zone of danger' of the well explosion caused by Defendants' negligence thus *solidifying his NIED claim*." (Emphasis added.) Thereafter, the response contained five pages of argument supporting the heading. At no time in the response did plaintiffs contend that Clifford's claim was not a NIED claim. For all these reasons, we find that Clifford's claim was for NIED.

¶ 36    Finally, we address plaintiffs' alternative contention that Clifford's emotional damages were not precluded under a zone-of-danger theory simply because no other person was injured in the well explosion. In support, the plaintiffs rely on *Buckley v. Jones Truck Lines, Inc.*, 778 F. Supp. 449 (N.D. Ill. 1991), and *Hayes v. Illinois Power Co.*, 225 Ill. App. 3d 819 (1992). In *Buckley*, the "direct victim" was the truck driver who was killed in the accident; Buckley was the bystander who "witnessed the truck crashing into the pipeline." *Buckley*, 778 F. Supp. at 450. In *Hayes*, Todd witnessed his grandfather's electrocution and was personally injured when he was electrocuted after reaching out to help his grandfather. *Hayes*, 225 Ill. App. 3d at 821. The court

15

found that Todd pled sufficient facts as both a direct victim due to his own injury at the scene as well as a bystander because he remained in the zone of danger where his grandfather was injured until the electricity was shut off. *Id*. at 825-26.

¶ 37 Neither *Buckley* nor *Hayes* allowed for recovery in a NIED bystander case where there was no direct victim. We are aware of no case since the issuance of *Rickey* that ever deviated from the requirement that to be in the zone of danger, the bystander must be "in such proximity to the accident in which the direct victim was physically injured." *Rickey*, 98 Ill. 2d at 555. Therefore, we affirm the trial court's summary judgment for defendants.

¶ 38                                    III. CONCLUSION

¶ 39 For the foregoing reasons, we affirm the trial court's finding that Clifford's claim was a NIED claim as well as the trial court's summary judgment for defendants.

¶ 40 Affirmed.